767 P.2d 43

Irene BURRINGTON, Vernon P. Burrington, Christine S. Christian, Leisa Cothrun, Ronald K. Cothrun, Ryan Cothrun, William E. Crawford, Deloys M. Crawford, Leslie Renee Crawford, Jeffrey R. Crawford, Robert L. Dobbs, Robert L. Dobbs, II, Gloria O. Dobbs, Daniel L. Dobbs, Gary H. Drake, Penelope A. Fisher, Louis H. Giorza, Rose M. Giorza, Geno Giorza, Joseph I. Giorza, II, Richard Hounshell, Cytha Hunt, Thomas B. Hunt, Brandon T. Hunt, Crystal N. Hunt, Arlene F. Hutchinson, James Hutchinson, Kim I. Hutchinson, James S. Iannello, Janet N. Iannello, Elaine F. Insalaco, John Insalaco, Anthony C. Insalaco, Salvatore N. Insalaco, Stephanie L. Joy, Gary P. McDonald, Karen K. McDonald, Nicole L. McDonald, Steven D. McDonald, William Pearson, Vicky J. Preston, Nicole D. Preston, Charlene A. Vasbinder, David J. Vasbinder, Donald Vasbinder, Molly A. Vasbinder, Eunice M. West, John T. West, Raymond W. Luckie, Sarah Luckie, Kelli Luckie, Holly R. Luckie, Hiddie B. Pyle, Ralph Ycedo, Jr., Albina Ycedo, Michael Edward Ycedo, Orville B. Williams, Lenora B. Williams, Melanie Williams, Lori Williams, Jason Williams, Catherine Ann Scott, Shawn Huntley Scott, and Stacy Ann Scott, Plaintiffs/Appellants,

v.

GILA COUNTY, Pinal–Gila Counties Air Quality Control District, City of Globe, State of Arizona, Jaquays Mining Corporation, D.W. Jaquays Mining & Contractors Equipment Company, D.W. Jaquays, Ethelyn Jaquays, Mr. and Mrs. Rex Town, and Neal Beaver, Defendants/Appellees.

No. 2 CA–CV 87–0302.

Court of Appeals of Arizona, Division 2, Department A.

Oct. 13, 1988.

Reconsideration Denied Nov. 16, 1988.

As Corrected Feb. 28, 1989.

See also 156 Ariz. 459, 752 P.2d 1045.

Sparks & Siler, P.C. by Joe P. Sparks and Kevin T. Tehan, Scottsdale, Harrison & Lerch, P.C. by Mark I. Harrison, Douglas L. Christian and Mary E. Berkheiser, Phoenix, for plaintiffs/appellants.

Burch & Cracchiolo, P.A. by Brian Kaven and Daniel R. Malinski, Robbins & Green, P.A. by William H. Sandweg III, Jill H. Grossman and William P. Hovell, Phoenix, Leonard Everett, Tucson, John H. Ryley, Sp. Asst. Atty. Gen., Crampton, Woods, Broening & Oberg by James R. Broening and Mary B. Wilson, Phoenix, for defendants/appellees.

OPINION

HOWARD, Judge.

This is another chapter in the seemingly endless stream of cases resulting from the asbestos contamination of the Mountain View Mobile Home Subdivision located on the outskirts of Globe, Arizona.[1] This appeal is taken from the granting of a sum-

---

1. See *Burns v. Jaquays Mining Corp.*, 156 Ariz. 375, 752 P.2d 28 (App.1987); *Bischofshausen, Vasbinder and Luckie v. D.W. Jaquays Mining and Contractors Equipment, Company*, 145 Ariz. 204, 700 P.2d 902 (App.1985); *Bischofshausen v. Pinal–Gila Counties Air Quality Control District*, 138 Ariz. 109, 673 P.2d 307 (App.1983).

mary judgment in favor of the appellees. The defendants named in the various complaints include the owners and developers of Mountain View Mobile Home Estates, individual corporations owning interest in asbestos milling operations which adjoined the Mountain View Mobile Home Estates, Gila County and the Pinal–Gila County Air Quality Control District (AQCD), the City of Globe and the State of Arizona.

The plaintiffs were families who owned individual lots and mobile homes in Mountain View. In their complaints the plaintiffs sought damages for personal injury, as well as personal and real property damages due to alleged exposure to asbestos. Issues pertaining to the claims for damages due to personal injuries were raised and decided in *Burns v. Jaquays Mining Corp.,* supra.

Defendants moved for summary judgment on plaintiffs' real and personal property damage claims, contending: (1) plaintiffs had been fully compensated for their real and personal property losses; (2) plaintiffs had executed releases of real and personal property damage claims, stating that the releases were given in exchange for full compensation for such damage claims; and (3) as political subdivisions of the State of Arizona, Gila County, the Pinal–Gila County Air Quality Control District and the City of Globe were released by operation of the lease executed by plaintiffs in favor of the State of Arizona.

We consider the facts in the light most favorable to plaintiffs. *Gulf Insurance Co. v. Grisham,* 126 Ariz. 123, 613 P.2d 283 (1980). The plaintiffs filed the lawsuits involved here over a period commencing in 1980 and ending in 1983. In response to these suits, the United States Environmental Protection Agency (EPA) and the State of Arizona entered into an agreement authorizing the state to purchase real and personal property in Mountain View. Ninety percent of the money was to be paid by the federal government under the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S. C. § 9601 et seq. ("Superfund"). The other ten percent was to be paid by the state.

The affidavit of Michael P. Austin, an employee of the Arizona Department of Emergency and Military Affairs, showed the following. He served as executive consultant and project manager for the project. His duties included negotiating with the owners of the property and making compensation. He determined that personal property that could not be easily and cost-effectively cleaned would be purchased.

All items of personal property in Mountain View that residents and non-resident landlords identified as items they wished to sell were appraised by an independent appraiser to determine their replacement value. A total for each resident and non-resident landlord was reached and an offer for that amount was subsequently made by the state. If a Mountain View personal property owner did not feel that his or her offer was high enough, the state entered into negotiations with such owner. In the majority of these cases the state subsequently made a higher offer for this property. In no case did the state pay the personal property owner less than what the independent appraiser had recommended.

Each personal property owner receiving compensation signed a personal property release stating that he accepted the personal property settlement and released the Arizona Emergency Services, the Federal Emergency Management Agency and the State of Arizona from any further claims for payment for personal property relating to the relocation from the Mountain View Mobile Home Estate Subdivision in Globe.

All the real property in the subdivision was also purchased. An offer was made to each person who owned real property and/or a mobile home in Mountain View as of April 1983, based on the fair market value as determined by an independent appraiser without regard to the alleged asbestos contamination.

In addition to the offers made to acquire the real property and mobile homes, other benefits were available to the residents, including a "replacement housing payment," which was designed to compensate a resident owner for the increased cost of

buying a replacement house comparable to the home owned in Mountain View. If a comparable house in the area cost more to purchase than the fair market value of the home in Mountain View, the resident was paid that difference. Residents were also offered a "mortgage interest differential benefit" which involved the same concept as the replacement housing payment except that the former is applied to the higher cost of lending money for purchasing a house. As an example, if the resident had purchased a home in Mountain View at a nine percent mortgage rate and a replacement house was purchased at 12 percent, the mortgage interest differential benefit would compensate for the difference in the interest rates. The objective of both the replacement housing payment and the mortgage interest differential benefit was to ensure that the owner would not be "out-of-pocket" any money in acquiring comparable housing.

Mountain View residents were also paid incidental expenses, such as real estate commissions, escrow closing fees, title fees and similar expenses. They also received moving expenses.

The residents were further entitled to benefit from a temporary housing program. The temporary housing program provided all homeowner residents with rental payments for comparable dwelling, and moving expenses as well as utility maintenance payments, furniture rental payments and other miscellaneous expenses. Under this temporary relocation program, any Mountain View resident who wanted to move to temporary housing was provided with money permitting the resident to rent a comparable dwelling in the Globe area. The resident was then allowed to move to the place of his or her choice. The state paid various rental and cleaning deposits for such temporary housing, and since the furniture in Mountain View was allegedly contaminated, the state rented furniture for the temporarily dislocated residents. During this temporary relocation, the state paid moving expenses for up to 100 miles. If a Mountain View resident chose to move himself, the state paid a flat-rate weight of $500. If the resident chose not to move himself, the state contracted with a moving company to move the resident and the state was then billed directly by the moving company.

Non-resident landlords also received a "loss of income payment." In other words, the landlord was paid for the loss of rental income which occurred when the renter in Mountain View was relocated. Renters in Mountain View were allowed the same temporary housing benefits as resident landowners until the decision concerning the fate of Mountain View was reached. From that point, the renters were given a period of time during which they could stay in temporary housing before there was a cut-off. The renters were entitled to personal property compensation, as well as rental relocation assistance payment, or downpayment assistance in the case of a renter who wished to purchase a residence.

In connection with the payment to the owners for their mobile home or real property, the owners signed a document containing the following provision:

> Seller hereby assigns to the United States and to the State of Arizona all existing and future legal rights, legal claims, and legal causes of action relating to ownership of the property being conveyed by this purchase agreement including but not limited to permanent and temporary relocation costs borne by the United States and the State of Arizona. This assignment does not include any claim which seller has sustained for *loss of use and enjoyment of such property* as to parties other than the United States or the State of Arizona. The loss of use and enjoyment does not include anything for which seller has received or will (under this purchase agreement) receive assistance or other compensation from the United States or the State of Arizona.

(Emphasis added.)

In response to the motion for summary judgment certain of the plaintiffs conceded that they had no personal property claims or real property damage claims against the

defendants.[2]

The response of the remaining plaintiffs to the motion for summary judgment consisted of affidavits by many of the plaintiffs stating generally that they did not receive the true value of several of the improvements made during their ownership of the property as well as having not been compensated for some unspecified items of personal property which they claim could not be "safely decontaminated." In arguing that the amounts paid by the state did not reflect the true value of the property, the affiants aver that the state's offers "were not the amounts that plaintiffs would have accepted in an arm's length transaction for the sale of their property." The plaintiffs offered no evidence or expert testimony in support of their contention that the amounts paid by the state did not reflect the true value of their property.

## EFFECT OF THE RELEASES

The defendants Gila County, City of Globe and Pinal–Gila AQCD have two positions regarding the release. Their first argument is that when the plaintiffs released the state they also released them because they are political subdivisions of the state. Their second argument is that in any event, the plaintiffs were compensated in full.

■ The release of one joint tortfeasor is not a release of any other joint tortfeasor unless the document is intended to release the other joint tortfeasor, or the payment is full compensation, or the release expressly so provides. *Adams v. Dion*, 109 Ariz. 308, 509 P.2d 201 (1973). While it may be true that the defendants Gila County, City of Globe and the AQCD are subdivisions of the state, it does not follow that the release of the state also releases them. These defendants are distinct entities having separate powers, and they cannot claim that the execution of the release or the assignments mentioning the State of Arizona constituted a release of their liability.

■ This leads us to the next question. Were the plaintiffs fully compensated for their loss? In this regard we note that the release and assignment signed by the plaintiffs in connection with the purchase of their real estate/mobile homes specifically states that compensation for loss of use and enjoyment was not included in the sums paid to them. Therefore, if the plaintiffs have a claim for relief against the defendants for such loss under Arizona law, then the claim is still available to them. In *Burns v. Jaquays Mining Corp.*, supra, we held that under the Restatement (Second) of Torts § 929 (1977), one can recover for such damages as a result of a nuisance. The defendants argue that the plaintiffs cannot recover for loss of use and enjoyment because such damages only accrue when there has not been a total destruction of the value of the land, and that the sale of the land to the defendants was, in effect, a total destruction. In other words, the defendants claim that the plaintiffs are only entitled to the fair market value of the land. We do not agree. Such damages exist separate and apart from the depreciation of the land. *Ayers v. Township of Jackson*, 202 N.J.Super. 106, 493 A.2d 1314 (1985), aff'd. in part, rev. in part, 106 N.J. 557, 525 A.2d 287 (1987).

**2.** The residents who conceded in their response they had no personal property damage claims against the defendants were: Georgina Burns, Ryan R. Cothrun, Deloys M. Crawford, Jeffrey R. Crawford, William E. Crawford, Daniel L. Dobbs, Robert L. Dobbs, II, Dawn L. Winter (Drake), Stephanie (Joy) Dobbs, Gary H. Drake, II, Dawn L. Fisher (Rice), Gino Giorza, Joseph I. Giorza, II, Leslie Rene Hodgman (Crawford), Cathy J. Hounshell, Richard Hounshell, Brandon T. Hunt, Crystal N. Hunt, Kim I. Hutchinson, Patrick W. McClellan, Tamiko McClellan, Toni M. McClellan, Nicole L. McDonald, Steven D. McDonald, Nicole D. Preston, Vicky J. Preston, Shannon Richards, David J. Vasbinder, Deborah A. Vasbinder, and Molly A. Vasbinder.

The residents who conceded in their response they had no real property damage claims against the defendants were: Georgina A. Burns, Ryan R. Cothrun, Jeffrey R. Crawford, Daniel L. Dobbs, Robert L. Dobbs, II, Stephanie (Joy) Dobbs, Dawn L. Winter (Drake), Gary H. Drake, II, Dawn L. Fisher (Rice), Gerald W. Fisher, II, Gino Giorza, Joseph I. Giorza, II, Leslie Rene Hodgman (Crawford), Cathy J. Hounshell, Richard Hounshell, Brandon T. Hunt, Crystal N. Hunt, Kim I. Hutchinson, Patrick W. McClellan, Tamiko McClellan, Toni M. McClennan, Nicole L. McDonald, Steven D. McDonald, Nicole D. Preston, Vicky J. Preston, Shannon Richards, David J. Vasbinder, Deborah A. Vasbinder, and Molly A. Vasbinder.

We do agree, however, with the defendants' contention that there is no genuine issue of fact as to whether the plaintiffs received full compensation for their real and personal property.

Rule 56(b), Rules of Civil Procedure, 16 A.R.S., provides that a party against whom a claim is asserted may move with or without supporting affidavits for summary judgment in his favor as to all or any part thereof. Rule 56(e), Rules of Civil Procedure, 16 A.R.S., provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial.

(Emphasis added.) The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "When a moving party has carried his burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

The United States Supreme Court has analyzed the moving party's burden under Rule 56 as follows:

> [W]e find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials negating the opponent's claim. On the contrary, Rule 56(c), which refers to "the affidavits, if any," suggests the absence of such a requirement. And if there were any doubt about the meaning of Rule 56(c) in this regard, such a doubt is clearly removed by Rules 56(a) and (b), which provide that claimants and defendants, respectively, may move for summary judgment *"with or without supporting affidavits."* The import of these subsections is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied.

(Emphasis in original.) *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 274 (1986).

Plaintiffs claim that certain portions of Austin's affidavit should have been stricken by the trial court and that when these portions are not considered, defendants did not bear their burden of showing that there were no genuine issues of fact. We do not agree. Rule 56(c) requires that supporting affidavits be based on personal knowledge and set forth facts that would be admissible in evidence. While Austin's statements to the effect that the plaintiffs had been compensated in full and paid the fair market value of their land and personal property may not have been competent, the balance of his affidavit sufficed. Austin based his negotiations, settlement and compensation on the determinations of independent appraisers. Personal property was valued at replacement value and real property at fair market value. Plaintiffs' response to the motion for summary judgment consisted of such vague statements as, "We didn't get enough" and "If it were an arm-length transaction, we would not have accepted." These generalized and unsupported statements are not sufficient to withstand a motion for summary judgment. Rule 56(e) made it incumbent upon plaintiffs to set forth *specific facts.* They failed to do so.

## THE APPLICABILITY OF THE COLLATERAL SOURCE RULE

Even though the plaintiffs received and accepted payments from the "Superfund," they contend that since the defendants did not provide the fund from which the benefits were paid, the benefits were from a collateral source and they should be able to recover from the defendants all of their damages. Arizona follows the collateral source rule that total or partial com-

pensation for an injury received from a collateral source fully independent of the wrongdoer does not operate to reduce the damages recoverable from the wrongdoer. *Hall v. Olague,* 119 Ariz. 73, 579 P.2d 577 (App.1978). The collateral source rule does not apply here because the plaintiffs gave up their right to pursue the defendants by accepting money from the "Superfund." 42 U.S.C. § 9614(b) provides:

> Any person who receives compensation for removal cost or damages or claims pursuant to this chapter shall be precluded from recovering compensation for the same removal cost or damages or claims pursuant to any other State or Federal law....

42 U.S.C. § 9601(4) states that a claim means "a demand in writing for a sum certain." 42 U.S.C. § 9612 provides that all claims which may be asserted against the "Superfund" shall be presented in the first instance to the owner or operator of the facility from which the hazardous substance has been released, if known to the claimant. Plaintiffs' lawsuit filed against the defendants in this case constituted a claim within the meaning of the Act. The compensation which they received from the "Superfund" was for the payment of a claim within the meaning of § 9614(b).

## CONCLUSION

Only those plaintiffs who have a claim for relief for loss of use and enjoyment from 1979 to the date of the sale of their real property have a claim which can still be asserted. The judgment is reversed as to these plaintiffs.

The judgment against the plaintiffs who admitted having no real property claims is affirmed. The judgment is also affirmed as to those plaintiffs who assert a claim for personal property damages and to those plaintiffs who assert any other claim for real property damages.

LIVERMORE, P.J., and HATHAWAY, J., concur.