802 P.2d 1000

ORME SCHOOL,
Petitioner/Defendant/Cross-defendant,

v.

Honorable Kenneth W. REEVES, III,
Judge Pro Tem of the Maricopa
County Superior Court, Respondent,

COLLEGE WORLD SERVICES, INC.,
Real Party in
Interest/Defendant/Cross-defendant.

No. CV–89–0403–SA.

Supreme Court of Arizona,
En Banc.

Dec. 6, 1990.

Broening Oberg and Woods by Neal B. Thomas and James R. Broening, Phoenix, for Orme School.

Struckmeyer and Wilson by Donald R. Wilson, Charles E. Fleury, Phoenix, for College World Services, Inc.

## OPINION

FELDMAN, Vice Chief Justice.

Orme School (Orme) initiated an original special action [1] proceeding in this court, claiming that the trial judge abused his discretion and acted without legal authority in denying its motion for summary judgment. We accepted jurisdiction to reconsider our present standards for summary judgment in light of recent United States Supreme Court decisions interpreting the federal analog of Rule 56, Ariz.R.Civ.P., 16 A.R.S.

We have jurisdiction under article 6, § 5(1) of the Arizona Constitution and Rule 7(a), Ariz.R.P.Spec.Act., 17B A.R.S.

## JURISDICTION

We decide whether to accept jurisdiction in special action proceedings on a number of grounds. *See United States v. Superior Court,* 144 Ariz. 265, 269, 697 P.2d 658, 662 (1985). We generally disapprove of special action proceedings asking the appellate system to review trial court denial of motions for summary judgment. *See, e.g., Ft. Lowell–NSS Ltd. Partnership v. Kelly,* 166 Ariz. 96, 800 P.2d 962 (1990). We continue to believe that in all but the exceptional case, *e.g., King v. Superior Court,* 138 Ariz. 147, 150 n. 3, 673 P.2d

---

**1.** In Arizona, relief formerly obtained by writs of prohibition, mandamus or certiorari is now obtained by "special action." Rule 1, Arizona Rules of Procedure for Special Actions, 17B A.R.S.

787, 790 n. 3 (1983), the appellate system should exercise its discretion to refuse jurisdiction of cases in which it is asked to review the factual or even legal basis of the trial court's denial of a motion for summary judgment. *See Alhambra School Dist. v. Superior Court*, 165 Ariz. 38, 40 n. 3, 796 P.2d 470, 472 n. 3 (1990).

■ We believe, however, this case is one of the exceptions that illustrates the rule. The question presented here is a pure issue of law, requiring neither factual review nor interpretation. The issue presented is not peculiar to this or any particular case. Rather, it involves the analytical framework or construct to be applied to all cases and is therefore of general concern to litigants and the judicial system. New standards for adjudicating motions for summary judgment were recently adopted by the United States Supreme Court, but have not yet been considered by this court outside of the first amendment context. *See Dombey v. Phoenix Newspapers, Inc.*, 150 Ariz. 476, 724 P.2d 562 (1986).

Our appellate courts have considered these new standards and have cited them with approval. *See United Bank v. Allyn*, Dkt. 1 CA–CIV 88–474 (Ct.App. April 17, 1990); *Burrington v. Gila County*, 159 Ariz. 320, 767 P.2d 43 (Ct.App.1988). The appellate courts have noted, however, that Arizona law is unsettled as to the proper standard for summary judgment and that this court has not issued any guidance outside of the defamation area. *See Scottsdale Publishing, Inc. v. Superior Court*, 159 Ariz. 72, 83 n. 8, 764 P.2d 1131, 1142 n. 8 (Ct.App.1988) (citing *Dombey*, 150 Ariz. at 490, 724 P.2d at 576); *United Bank v. Allyn, supra*. Finally, because orders denying motions for summary judgment are not appealable, special action is the only method by which the issue can be presented.

Given the nature of the question, the need to review and reconsider interpretations of our own rules, and the possible need to revise many cases from this court,

the action is appropriately brought directly to us. *See* Rule 7(a), Ariz.R.P.Spec.Act., 17B A.R.S. For these reasons, we accept jurisdiction.

## FACTS AND PROCEDURAL HISTORY

Orme is a private boarding school located near Mayer, Arizona that provides secondary education to its students. Ryan W. Mills (Mills) was a student at Orme in the fall of 1987 when he contracted salmonella food poisoning. The infection was evidently quite serious and has attacked Mills' spine. Mills brought a damage action against Orme, which had provided its students with meals during the period in which Mills contracted salmonella. He also joined College World Services, Inc. (CWS) as a defendant, alleging that CWS, the school's food service contractor, had provided the food Orme served its students.

Orme cross-claimed (*see* Rule 13(g), Ariz. R.Civ.P., 16 A.R.S.), alleging in effect that if Mills had contracted salmonella from a meal provided at Orme, the food would have been prepared by CWS. Thus, Orme argued, it was at most a passive wrongdoer and was entitled to indemnity from CWS, the active wrongdoer whose act had caused the injury. *See generally Busy Bee Buffet, Inc. v. Ferrell*, 82 Ariz. 192, 310 P.2d 817 (1957). The parties do not argue the substantive law relating to rights of indemnity asserted by one tortfeasor against another, and we assume, for purposes of this opinion only, that Orme would be entitled to indemnity if Mills did contract salmonella from a meal served by Orme and prepared by CWS.

The facts relevant to that determination are uncontested and very simple. Mills could have contracted salmonella during a period of approximately six weeks while he was at Orme. During that period of time, Mills consumed 100 to 120 meals provided by Orme. All of these meals were prepared by CWS, with the exception of a single meal prepared by Orme. There was no direct evidence that the salmonella infestation was attributable to a particular meal. Nor was there any circumstantial evidence from which the finder of fact

could make such an inference. Thus, if Mills prevails in his personal injury claim, it will be on the theory that the medical evidence establishes that the salmonella probably was contracted from one of the meals he ingested during the six-week period he was at Orme, but there will be no evidence inculpating a particular meal. In that event, as between Orme and CWS, the mathematical odds from this record would be over one hundred to one in favor of the conclusion that the "culpable meal" was prepared by CWS rather than Orme. Conversely, there is certainly a remote possibility (one out of one hundred) that Mills contracted salmonella from the meal prepared by Orme.

Orme moved for summary judgment on its indemnity claim against CWS. The trial judge denied the motion, stating he believed that under Arizona law, a genuine issue of material fact existed, precluding summary judgment in Orme's favor. The judge concluded that

> if the test for granting summary judgment adopted by the United States Supreme Court for application of Federal Rule of Civil Procedure 56 had been adopted in Arizona ... summary judgment in favor of Orme School would have been appropriate.

Following that ruling, Orme filed a direct petition in this court seeking special action relief. Orme argues that the standard requiring that summary judgment be denied if there is the "slightest doubt" as to the facts is incorrect and destroys the salutary purposes underlying Rule 56. It argues that the existence of a "mere scintilla of evidence" against the movant does not create a genuine issue of material fact. Rather, Orme urges us to follow the United States Supreme Court in applying the standard used for directed verdicts, which would grant the motion where "reasonable people could not differ" as to the facts presented by the evidence or the inferences to be drawn therefrom. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*

475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (where possible, we refer to these cases collectively as "the trilogy"). CWS agrees with Orme's views regarding the proper interpretation of the standards to be applied for Rule 56 consideration.

■ Lacking the benefit of a true adversary presentation, we narrow the range of decision to that necessary to decide the issues arising from Orme's motion for summary judgment on its indemnity claim against CWS, leaving to another day the question of adopting the trilogy in its entirety.[2] In this case we construe Rule 56, Ariz.R.Civ.P., 16 A.R.S. Federal cases, dealing with the federal counterpart, are instructive, persuasive, but not binding in the construction of our rule. *See Ritchie v. Grand Canyon Scenic Rides,* 165 Ariz. 460, 463–64, 799 P.2d 801, 804–05 (1990). We do, however, subscribe to the principle that uniformity in interpretation of our rules and the federal rules is highly desirable. *Id.; see State ex rel. Miller v. Tucson Assocs. Ltd. Partnership,* 165 Ariz. 519, 799 P.2d 860 (Ct.App.1990) (overruling *Ferguson v. Cessna Aircraft Co.,* 132 Ariz. 47, 643 P.2d 1017 (Ct.App.1981), because of subsequent interpretation of Rule 803(8)(C), Ariz.R.Evid., 17B A.R.S., in *Beech Aircraft Corp. v. Rainey,* 488 U.S. 153, 109 S.Ct. 439, 102 L.Ed.2d 445 (1988)). Accordingly, we turn first to the policy underlying the summary judgment rule, then to a brief consideration of the trilogy, and finally to an application of the proper summary judgment rule to the portion of the case before us: Orme's indemnity claim against CWS.

## DISCUSSION

### A. The Policy of the Summary Judgment Rule

We live in what is widely perceived as a time of great increase in litigation and one

---

**2.** Because Orme and CWS have advocated a uniform construction of the rule and no members of the trial bar have made requests to appear as amicus, we lack the benefit of a full adversarial presentation in this case. We note that in cases such as this, this court is often assisted by receiving the views of various interested parties. This clash of views is what makes our adversary system work.

in which many meritless cases are filed, vastly increasing the dockets before our trial judges.[3] As a result, the courts of this country have been urged to liberalize the standards so as to permit summary judgment in a larger number of cases. *See, e.g.,* Report of the Commission on the Courts, The Future of Arizona Courts, at 62 (1989).[4]

The essence of the summary judgment rule is as follows:

> The judgment sought shall be rendered forthwith if the pleadings, deposition, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c), Ariz.R.Civ.P., 16 A.R.S. The policy behind the federal rule is not described in the Advisory Committee's note except by reference to an article by Clark and Samenow, *The Summary Judgment,* 38 YALE L.J. 423 (1929). For an analysis of that article, see generally Stempel, *A Distorted Mirror: The Supreme Court's Shimmering View of Summary Judgment, Directed Verdict, and the Adjudication Process,* 49 OHIO ST.L.J. 95, 133–44 (1988). Essentially, the rule was intended as an efficient instrumentality to expedite the business of the court by permitting the summary adjudication of meritless claims without the necessity of trial. *See* C.A. WRIGHT, THE LAW OF FEDERAL COURTS § 99, at 664 (4th ed.1983); Schwarzer, *Summary Judgment Under the Federal Rules: Defining Genuine Is-*

*sues of Material Fact,* 99 F.R.D. 465, 465–67 (1984). This court fully agrees with an early description of the policy behind the rule:

> Summary judgment procedure is not a catchpenny contrivance to take unwary litigants into its toils and deprive them of a trial, it is a liberal measure, liberally designed for arriving at the truth. Its purpose is not to cut litigants off from their right of trial by jury *if they really have evidence which they will offer on a trial,* it is to carefully test this out, in advance of trial by inquiring and determining whether such evidence exists.

*Whitaker v. Coleman,* 115 F.2d 305, 307 (5th Cir.1940) (emphasis added).

These principles, of course, are easier stated than applied. Clearly, summary judgment should be granted when the evidence presents no genuine issue of material fact. However, attempts to define and recognize a "genuine issue" continue to cause confusion in our case law. Most Arizona cases have advocated a rather stringent standard for granting summary judgment, in accordance with our decision in *Peterson v. Valley National Bank,* which held that "summary judgment ... is not a substitute for a trial" and "litigants are entitled to the right of trial where there is the slightest doubt as to the facts." 90 Ariz. 361, 362, 368 P.2d 317, 318 (1962); *see also Chiara v. Fry's Food Stores, Inc.,* 152 Ariz. 398, 401, 733 P.2d 283, 286 (1987); *Elerick v. Rocklin,* 102 Ariz. 78, 81, 425 P.2d 103, 106 (1967); *Lujan v. MacMurtrie,* 94 Ariz. 273, 277, 383 P.2d 187, 189 (1963).[5]

---

3. *See* Stempel, *A Distorted Mirror: The Supreme Court's Shimmering View of Summary Judgment, Directed Verdict, and the Adjudication Process,* 49 OHIO ST.L.J. 95, 96 nn. 1 and 2 (1988) (citing various legal commentators on "the litigation explosion").

4. We deal here only with the proper interpretation of the existing rule, leaving to our rulemaking responsibility, Ariz. Const. art. 6, § 5(5), the question of whether the Commission's recommendation should be implemented by changing the rules.

5. Though the majority of cases adopt the general thrust of *Peterson,* they have used some interesting and perhaps inappropriate language in

describing the standard for grant of summary judgment. *See, e.g., Ft. Mohave Farms, Inc. v. Dunlap,* 96 Ariz. 193, 199, 393 P.2d 662, 665 (1964) (summary judgment proper only in "clear cases" where there is "no doubt"); *Colby v. Bank of Douglas,* 91 Ariz. 85, 87, 370 P.2d 56, 57 (1962) (summary judgment should never be entered unless the facts are "clear and undisputed"); *Flynn v. Lindenfield,* 6 Ariz.App. 459, 460, 433 P.2d 639, 640 (1967) ("any doubt" as to whether there are issues of fact to be litigated under any theory of liability will preclude summary judgment); *Arizona Land Title & Trust v. Safeway Stores, Inc.,* 6 Ariz.App. 52, 57, 429 P.2d 686, 691 (1967) (improper to grant summary judgment if there is any "substantial doubt" as to the "critical facts"); *Lawless v. Ennis,* 3 Ariz.

Therefore, most courts have declined to grant summary judgment if either the facts are in dispute (or there is the slightest doubt that they are) or the evidence presented could lead "reasonable minds" to draw different inferences therefrom. *See Webster v. Culbertson*, 158 Ariz. 159, 761 P.2d 1063 (1988); *Wisener v. State*, 123 Ariz. 148, 598 P.2d 511 (1979); *Lundy v. Prescott Valley, Inc.*, 110 Ariz. 362, 519 P.2d 61 (1974); *Livingston v. Citizen's Utility, Inc.*, 107 Ariz. 62, 481 P.2d 855 (1971); *cf. Northern Contracting Co. v. Allis-Chalmers Corp.*, 117 Ariz. 374, 573 P.2d 65 (1977) (even if there is no factual dispute, where *possible* inferences to be drawn from the circumstances are conflicting, summary judgment is improper).

Although Orme argues that the "reasonable inference" language in some of our cases equates to the directed verdict standard adopted by the United States Supreme Court, we note that many of our cases use the "slightest doubt" and "reasonable inference" tests simultaneously. *See Webster*, 158 Ariz. at 162, 761 P.2d at 1066; *Wisener*, 123 Ariz. at 149, 598 P.2d at 512; *Livingston*, 107 Ariz. at 64, 481 P.2d at 857. We do, however, agree that the language in certain Arizona cases seems to call for a more liberal summary judgment standard. *See, e.g., Compton v. National Metals Co.*, 10 Ariz.App. 366, 459 P.2d 93 (1969) (summary judgment appropriate only where there is no "substantial evidence" in opposition, *i.e.*, the tendered evidence is too incredible to be accepted by reasonable minds, or even if true, it is without legal probative force); *see also* Bouma & Parker, *Summary Judgment in*

*Arizona: A Call for a New Standard*, ARIZ. ATT'Y. 24, 24–25 (March 1990) (listing language of conflicting standards, and noting that some discourage summary judgment and some would apply it more liberally).

The confusion in Arizona case law was paralleled in the federal courts prior to the recent line of Supreme Court decisions. *See* 6 J. MOORE, W. TAGGART & J. WICKER, MOORE'S FEDERAL PRACTICE § 56.15, at 56–219 to 56–246 (2d ed. 1990) (hereafter MOORE'S FEDERAL PRACTICE); *see also* Stempel, *supra*, 49 OHIO ST.L.J. at 155–57.[6] It was against this background that the United States Supreme Court considered the trilogy of 1986 cases.

### B. The Trilogy

It is unusual for the Supreme Court to grant certiorari to write on a federal rule that has been in place for close to fifty years and quite extraordinary when, in one year, it accepts three such cases involving a single rule. *See* Stempel, *supra*, 49 OHIO ST.L.J. at 100. The concern that led to this may also account for the fact that the three cases produced nine opinions and that the Court was closely divided in all of the cases, with justices who were in the majority in one case in the minority in others.[7] Given our intent to keep this opinion narrow, we limit our description of the trilogy to principles that can be fairly discerned and are relevant to the facts of the problem before us.

App. 451, 456, 415 P.2d 465, 470 (1966) (summary judgment improper even where the judge feels that he will later be required to direct a verdict—essential to see if different evidence will develop at trial).

**6.** It is instructive to note that the present standard for granting a directed verdict is also the product of "legal evolution." The traditional rule was the "mere scintilla" standard, which held that the case must go to the jury unless there was "no evidence." *Galloway v. United States*, 319 U.S. 372, 404, 63 S.Ct. 1077, 1094, 87 L.Ed. 1458 (1943) (Black, J., dissenting) (noting that the "scintilla" rule was repudiated in *Dauphin Improvement Co. v. Munson*, 81 U.S. (14

Wall.) 442, 447, 448, 20 L.Ed. 867 (1871), which held that there must be evidence "sufficiently persuasive" to the judge for him to find that the jury could properly proceed); *see also* 5A MOORE'S FEDERAL PRACTICE, § 50.02(1), at 50–24 to 50–25.

**7.** *Celotex*, for instance, was written by Chief Justice Rehnquist, who had joined the majority in *Matsushita* and dissented in *Anderson*, describing the majority opinion as sounding "much like a treatise about cooking by someone who has never cooked before and has no intention of starting now." 477 U.S. at 269, 106 S.Ct. at 2521.

### 1. *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*

*Matsushita* involved an antitrust case in which American electronics manufacturers claimed Japanese manufacturers had conspired to keep prices for their goods high in Japan in order to finance predatory pricing policies for goods exported to the United States. The plaintiffs alleged that the Japanese manufacturers flooded the American market with television sets and similar products at very low prices calculated to drive the American competition out of the market. According to the American manufacturers, over the long term the conspiracy would enable the Japanese manufacturers to increase their market share and eventually control the market.

All of the evidence to support the claim was circumstantial. Five members of the Court concluded that the basis of the plaintiffs' claim was inherently implausible because no reasonable group of manufacturers would accept certain short-term losses in a market to gain only the speculative opportunity of long-term gains. The majority noted that in order to recoup their losses, the Japanese would have to successfully achieve the monopoly power to set higher prices, and then sustain those prices long enough to offset the earlier losses. *Matsushita,* 475 U.S. at 590, 106 S.Ct. at 1358.

The Court held that where the factual context made a claim "implausible," the claimant was required to come forward with more persuasive supporting evidence than would otherwise be required. *Id.* at 587, 106 S.Ct. at 1356. This language might be construed to change traditional summary judgment practice and allow the judge to weigh the persuasive force of the evidence. However, in the later decision of *Anderson* the Court specifically disclaimed such an intent, stating "it is clear enough from our recent cases that at the summary judgment stage the judge's function is not himself to weigh the evidence and determine whether there is a genuine issue for

trial." 477 U.S. at 249, 106 S.Ct. at 2511. Indeed, the *Matsushita* majority finally concluded that a court was merely to determine whether there is evidence that could reasonably be believed in determining whether " 'a genuine issue for trial' exists within the meaning of Rule 56(e)." *Matsushita,* 475 U.S. at 596–98, 106 S.Ct. at 1361–62.[8]

In dissent, Justice White noted that the Court had made "confusing and inconsistent statements about the appropriate standard for granting summary judgment." *Id.* at 599, 106 S.Ct. at 1362. He accused the majority of making "a number of assumptions that invaded the factfinder's province." *Id.* at 601, 106 S.Ct. at 1363–64. However, Justice White directed his criticism to the impact of the majority's decision upon antitrust cases, lending support to the view that *Matsushita* is limited to this context.

We examine *Matsushita* only for the purpose of extracting the rule laid down by the Court for the adjudication of summary judgment motions. Because the majority denied that it had articulated any novel theory to be applied to summary judgment motions, we incline to adopt Stempel's view that *Matsushita* is "more an opinion restricting the use of antitrust claims than an opinion on summary judgment." Stempel, *supra,* 49 OHIO ST.L.J. at 111 (claiming that summary judgment was merely the vehicle by which a majority of the court rid the judicial system of an antitrust claim based on an economic theory it disfavored).

### 2. *Anderson v. Liberty Lobby*

*Anderson* was a libel action with constitutional dimensions in which the plaintiff had the burden of establishing by clear and convincing evidence that the defendant had acted with actual malice as required by *New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Justice White, writing for the majority of six, concluded that in ruling on a motion for sum-

---

**8.** The plaintiffs in *Matsushita* produced a considerable body of expert economic evidence explaining in detail why and how the Japanese manufacturers had done just what they were charged with doing, but the majority found it insufficient to overcome its perception of the inherent implausibility of the case. *See* 475 U.S. at 594 n. 19, 106 S.Ct. at 1360 n. 19.

mary judgment, the trial court should consider both the quantum and quality of evidence required by the applicable substantive standard. Thus, if the substantive law required clear and convincing evidence to support an element of the claim or defense, the court might grant summary judgment if, in considering a motion for directed verdict on the same evidentiary basis, it would have concluded that the evidence presented was so "one-sided" it failed to satisfy the plaintiff's burden. *Anderson,* 477 U.S. at 251–56, 106 S.Ct. at 2511–14.

Given this rule, in cases in which the burden is greater than a preponderance of the evidence, analytical constructs that turn on such concepts as "scintilla of the evidence" and "slightest doubt" are no longer useful. This court has already adopted *Anderson*'s holding in conjunction with first amendment cases. *See Dombey,* 150 Ariz. at 486, 724 P.2d at 572 (holding that where the *New York Times* "clear and convincing evidence" requirement applies, the summary judgment inquiry will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either plaintiff or defendant). There are, of course, other civil cases in which the plaintiff's burden on one or all elements requires clear and convincing evidence. *See, e.g., Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 331–32, 723 P.2d 675, 681 (1986) (punitive damages); *General Accident Fire & Life Assurance Corp. v. Little,* 103 Ariz. 435, 443, 443 P.2d 690, 698 (1968) (common law fraud). In *Dombey,* we did not limit the rule to first amendment cases and we see no reason why it should be so limited.

We are quite cognizant, however, that it is difficult for a court to determine whether a specific quantum of evidence is "clear and convincing" without evaluating and weighing that evidence, at least to some minimal extent. *See Anderson,* 477 U.S. at 265–67 (Brennan, J., dissenting) and 271 (Rehnquist, J., dissenting), 106 S.Ct. at 2519–20 and 2522. In dealing with motions

for directed verdict, it has also been the traditional rule that the trial judge will not weigh evidence or determine questions of credibility, will not draw an inference where conflicting inferences are possible, and will defer to the jury on all disputed material facts. 6 MOORE'S FEDERAL PRACTICE § 56.04(2), at 56–65 to 56–66. It is equally true that in ruling on motions for directed verdict, trial judges must, to some extent, make some preliminary evaluation of the evidence. *See generally* J. FRIEDENTHAL, M. KANE & A. MILLER, CIVIL PROCEDURE § 12.3, at 547–48 (1985).

The argument has also been made that a standard which increases the judge's discretion to grant judgment without trial usurps the jury's function and interferes with the constitutional right to a jury trial.[9] The United States Supreme Court considered the trial court's power to direct a verdict in light of the seventh amendment guarantee of a jury trial in *Galloway v. United States,* 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458 (1943), and held that the federal courts retained the power to direct verdicts. The Court recognized that the seventh amendment preserves the right of trial by jury as it existed at common law. Because there was a procedure similar to the directed verdict in England and the Colonies prior to 1791, and because the right to jury trial only attached if the case presented a genuine factual question, the Court felt justified in upholding the directed verdict procedure. *Id.* at 388–96, 63 S.Ct. at 1086–90. Justice Black, perhaps the strongest advocate for preserving the full extent of the constitutional guarantee of trial by jury in civil cases, dissented from the result in *Galloway* but essentially agreed on the standard to be applied in the federal courts:

> [A] verdict should be directed, if at all, only when, without weighing the credibility of the witnesses, there is in the evidence no room whatever for honest difference of opinion over the factual issues

**9.** The Arizona Constitution, article 2, § 23, provides that the right to jury trial "shall remain

inviolate."

in controversy. I shall continue to believe that in all other cases a judge should, in obedience to the command of the seventh amendment, not interfere with the jury's function.

*Id.* at 407, 63 S.Ct. at 1096 (Black, J., dissenting). These views apply with equal force to summary judgment cases.

The motions for directed verdict and for summary judgment serve the same purpose of expediting the business of the court by removing meritless claims. Although the two motions occur at different times during the trial process, they share the underlying theory that there is no issue of fact and that the movant is entitled to judgment as a matter of law. Logically, then, the same standards should apply in determining whether to grant either motion. *See* 6 MOORE'S FEDERAL PRACTICE § 56.04, at 56–64 to 56–66. Thus, we believe that applying the rule of *Anderson* in all civil cases will do no violence to our guarantee of trial by jury under article 2, § 23 of the Arizona Constitution.

■ We hold, therefore, that although the trial judge must evaluate the evidence to some extent in ruling on a motion for summary judgment, the trial judge is to apply the same standards as used for a directed verdict. Either motion should be granted if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense. Thus, assuming discovery is complete,[10] the judge should grant summary judgment if, on the state of the record, he would have to grant a motion for directed verdict at the trial.[11]

**10.** Discovery is complete when the parties have completed all the discovery they intend, when they have completed the discovery allowed by the court, when the time for discovery allowed by rule or the court has expired, or when the circumstances are such, considering the case as a whole, the court can say that all discovery necessary for the purposes of the motion has been completed.

**11.** Our decision today does not alter the traditional rule that although courts have no discretion to grant summary judgment if the standard is not met, they can deny summary judgment

*See Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank,* 731 F.2d 112 (2d Cir. 1984); *Anderson v. Phillips Petroleum Co.,* 861 F.2d 631 (10th Cir.1988); *Heth v. Del Webb's Highway Inn,* 102 Ariz. 330, 429 P.2d 442 (1967); *Johnson v. Board of Education,* 101 Ariz. 268, 419 P.2d 52 (1966).

■ Thus, affidavits that contain inadmissible evidence, that are internally inconsistent, that tend to contradict the affiant's sworn testimony at deposition, and similar items of evidence may provide a "scintilla" or create the "slightest doubt" and still be insufficient to withstand a motion for summary judgment. *See Anderson,* 477 U.S. at 250–51, 106 S.Ct. at 2512 (the mere existence of a scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for plaintiff); Stempel, *supra,* 49 OHIO ST.L.J. at 157–58 and n. 324 (citing *Camfield Tires, Inc. v. Michelin Tire Co.,* 719 F.2d 1361 (8th Cir. 1983)); 6 MOORE'S FEDERAL PRACTICE § 56.11(3), at 56–123 to 56–127.

In reaching this conclusion, however, we are mindful of some further comments from Justice White. Fully subscribing to the views expressed, we quote them here as matters to be kept in mind by trial judges considering motions for summary judgment:

> Our holding ... does not denigrate the role of the jury. It by no means authorizes trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge, whether he is ruling on a motion for summary judgment or for directed verdict. The evi-

even where there is apparently no genuine dispute over any material fact. *See* 10A C. WRIGHT, A. MILLER & M. KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2728 (1983) and cases cited therein. In this sense, our standard is not a "mirror" of the directed verdict standard under rule 50(a) of the Federal Rules of Civil Procedure, which *requires* the trial judge to direct a verdict if there can be only one reasonable conclusion as to the verdict. *See Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

dence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. Neither do we suggest that the trial court should act other than with caution in granting summary judgment or that the trial judge may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial.

*Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513 (citations omitted).

■ We also point out that summary judgment should not be used as a substitute for jury trials simply because the trial judge may believe the moving party *will* probably win the jury's verdict, nor even when the trial judge believes the moving party *should* win the jury's verdict. *See Cox v. English–American Underwriters,* 245 F.2d 330, 333 (9th Cir.1957).

### 3. *Celotex Corp. v. Catrett*

■ *Celotex,* the third case in the trilogy, was an asbestos death claim brought by the survivors of an individual worker. The plaintiffs failed to produce evidence that the deceased was exposed to any particular product manufactured by the named defendant. The trial judge granted summary judgment and the court of appeals reversed, holding summary judgment was improper because the defendant failed to support its motion by submitting evidence negating exposure. *Catrett v. Johns–Manville Sales Corp.,* 756 F.2d 181 (D.C.Cir.1985). The Supreme Court held that a party moving for summary judgment need merely point out by specific reference to the relevant discovery that no evidence existed to support an essential element of the claim. Conclusory statements will not suffice, but the movant need not affirmatively establish the negative of

the element. *Celotex,* 477 U.S. at 328, 106 S.Ct. at 2555 (White, J., concurring). If the party with the burden of proof on the claim or defense cannot respond to the motion by showing that there is evidence creating a genuine issue of fact on the element in question, then the motion for summary judgment should be granted. We conceive of no mischief in this principle and believe it, too, should be adopted and applied to the case before us.

### C. Application to the Present Case

This case involves not a constitutional issue but a common law tort problem in which the applicable evidentiary standard is a preponderance of the evidence. Here, if anywhere, as a matter of historical practice and constitutional requirement, the jury is given the most deference in weighing evidence, drawing inferences, and reaching conclusions on questions of negligence, causation, and damages. *See generally* PROSSER & KEETON ON THE LAW OF TORTS § 37, at 235–38 (5th ed.1984); Ariz. Const. art. 18, § 5 (specifying that the defenses of contributory negligence and assumption of risk shall be for the jury to consider).[12]

■ Nevertheless, the fact that a claimant need only prove his or her tort claim or defense by a preponderance of the evidence does not imply that the courts must allow the claim or defense to go to the jury where the proponent presents no evidence from which a reasonable jury could find, directly or by inference, that the probabilities favored the proponent. On the record before us, it appears that, at best, the chances are one out of one hundred that Orme, the movant, was a tortfeasor, and ninety-nine out of one hundred that CWS was the active wrongdoer responsible for

12. *See also Rossell v. Volkswagen of America,* 147 Ariz. 160, 164–65, 709 P.2d 517, 521–22 (1985) (risk/benefit analysis involved in deciding whether defendant used "reasonable care" is generally for jury), *cert. denied,* 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986); *Markowitz v. Arizona Parks Board,* 146 Ariz. 352, 357–58, 706 P.2d 364, 369–70 (1985) (whether danger of injury was foreseeable is question of fact for jury); *Smith v. Chapman,* 115 Ariz. 211, 214,

564 P.2d 900, 903 (1977) (whether negligence is proximate cause of injury or damage is generally a question for the jury). In fact, this court has consistently stated that summary judgment is often not appropriate in a negligence case. *See Nicoletti v. Westcor, Inc.,* 131 Ariz. 140, 142, 639 P.2d 330, 332 (1982); *Chernov v. St. Luke's Hosp. Medical Center,* 123 Ariz. 521, 522, 601 P.2d 284, 285 (1979).

the salmonella infestation. CWS could produce no other evidence to refute the claim for indemnity. While one chance in one hundred may qualify as a "slightest doubt" and might be described as a "scintilla of evidence," it is apparent that with no direct evidence and no circumstantial evidence permitting any other or better inference, the trial judge would be required to direct a verdict in favor of Orme. On such evidence, no reasonable juror could conclude by even a preponderance of the evidence that Orme, rather than CWS, was actively responsible for the injury to Mills.

 Discovery presumably having been completed, in such a situation there is nothing to be gained by denying the motion for summary judgment and allowing the case to be tried. One might speculate that if the motion were denied and the case eventually tried, some witness might change his testimony or recall additional facts, new evidence might be discovered, or the complexion of the case might otherwise change. Nevertheless, when discovery has been completed and the proponent of a claim or defense is unable to produce evidence sufficient to send the claim or defense to the jury, it would effectively abrogate the summary judgment rule to hold that the motion should be denied simply on the speculation that some slight doubt (and few cases have complete certainty), some scintilla of evidence, or some dispute over irrelevant or immaterial facts might blossom into a real controversy in the midst of trial. The purpose of the summary judgment rule is to enable trial courts to rid the system of claims that are meritless and do not deserve to be tried. C.A. WRIGHT, *supra* § 99, at 664.

 We hold, therefore, that even though it might be said that CWS had raised a scintilla of evidence or a slight doubt, the evidence in this case was such that, if produced at trial, the trial judge would have been required to direct a verdict in favor of Orme and therefore should have granted summary judgment in its favor. In reaching this conclusion, however, we note that in ruling on the motion for summary judgment, the trial judge would not have been required to pass on the credibility of witnesses with differing versions of material facts, would not have been required to weigh the quality of documentary or other evidence, and was not required to choose among competing or conflicting inferences. In such situations, summary judgment is not appropriate.

## CONCLUSION

We grant relief and vacate the trial court's minute order denying the motion for summary judgment. The trial judge is instructed to enter judgment in favor of Orme on its claim for indemnity against CWS.

GORDON, C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.