NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ROBERT ALTHERR, *Plaintiff/Counter-Defendant/Appellant*,

*v.*

LARRY A. ALTHERR, *Defendant/Counter-Claimant/Appellee*.

No. 1 CA-CV 16-0387
FILED 11-28-2017

Appeal from the Superior Court in Yavapai County
No. V1300CV201580080
The Honorable Jeffrey G. Paupore, Judge *Pro Tempore*

**REVERSED AND REMANDED**

COUNSEL

Porter Law Firm, Phoenix
By Robert S. Porter
*Counsel for Plaintiff/Appellant*

Favour & Wilhelmsen PLLC, Prescott
By David K. Wilhelmsen, Lance B. Payette
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Acting Presiding Judge Peter B. Swann delivered the decision of the court, in which Judge Maria Elena Cruz and Judge Michael J. Brown joined.

---

**S W A N N**, Judge:

¶1            Robert ("Bob") Altherr brought an action against his brother Larry A. Altherr arising out of the parties' alleged partnership in the Jerome Grand Hotel.  The superior court determined on summary judgment that no partnership existed.  Because no written partnership agreement was required and the undisputed evidence does not compel a finding that there was no oral partnership agreement, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

¶2            Larry purchased the Hotel in 1994.  In 2000, Larry bought Bob's interest in the Hotel, and for the next six years Bob played no significant role in the Hotel's business.  Starting in 2007, however, Bob resumed substantial involvement in the Hotel's operations.   Bob's involvement continued until late 2014, when Larry took steps to preclude Bob from further participation.

¶3            Bob brought an action against Larry on the theory that the brothers had an oral partnership agreement that Larry breached.  In his initial complaint, Bob alleged that the partnership was formed in 2008.  In his first amended complaint, Bob alleged that Larry transferred the entirety of his interest to Bob in 2007 or 2008, and that the brothers agreed to equal partnership interests in 2010.  Bob asserted claims for breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, declaratory relief, constructive trust and accounting, and dissolution.

¶4            Larry moved for summary judgment, arguing that Bob was never made a partner in the Hotel after the 2000 buy-out, and that his later contributions to the Hotel were as an independent-contractor general manager.  Bob responded that the brothers agreed to an equal partnership in 2007, that Larry transferred the entirety of his interest to Bob in 2009, and that the two returned to an equal partnership in either late 2009 or early 2010.

¶5        The evidence presented in the summary-judgment proceedings reveals the following.  No recorded document identifies anyone other than Larry as the owner of the Hotel.  In 2010, the Hotel's accountant assisted in the creation of a limited liability company, and two trusts, one with Larry as trustee and one with Bob and his wife as trustee, that were made managers of the limited liability company.  Larry intended to transfer the Hotel to the limited liability company for estate-planning purposes.  According to Larry, the contemplated transfer would have been gratuitous; according to Bob, the transfer would have been consistent with partnership interests.  But Larry never actually deeded any property to the limited liability company or the trusts.

¶6        Larry is the sole obligor and trustor on a series of promissory notes and deeds of trusts, dating from 1994 to 2014, that encumber the Hotel.  Larry also is the sole obligor and trustor on a 2007 promissory note and deed of trust related to the purchase of a nearby property used for overflow Hotel parking.  Larry was the sole signer on the Hotel's tax filings.  Larry consistently reported the Hotel as his sole proprietorship for tax purposes, and no tax form of the type required of partnerships was ever filed for the Hotel.  Payments to Bob were identified as "Nonemployee compensation" in Hotel tax filings and as expenses in the Hotel's accounts.  The Hotel's accountant treated the business as a sole proprietorship and accounted for Bob's remuneration (the fixed-payment or profit-based nature of which the brothers dispute) as expenses and Larry's as owner withdrawals.  Larry was identified as the only "Owner" on the Hotel's "SOLE PROPRIETORSHIP" bank account.

¶7        Bob was authorized as a "Signer" on the Hotel bank account, and he actively managed Hotel operations.  He also was involved in the acquisition of the parking lot in 2007: in fact, he and Larry made the purchase offer together, the contract listed both brothers as buyers until it was amended to omit Bob's name, and the sellers thereafter sent a message congratulating both brothers on the completed transaction.

¶8        In 2008, Bob and his wife filed a complaint against the Town of Jerome that alleged the Hotel "is currently owned by a relative of the Plaintiffs but the Plaintiffs have no control over this property."

¶9        But in 2010 the brothers, through shared counsel and as "LARRY ALTHERR AND ROBERT ALTHERR, doing business as, THE JEROME GRAND HOTEL," filed a verified complaint against the Town of Jerome.  The original complaint, verified by Bob, alleged that the Hotel "is owned by the Plaintiffs."  An amended verified complaint, verified by

Larry, elaborated: "Plaintiffs, doing business as THE JEROME GRAND HOTEL ("HOTEL") own improved real property . . . on which the HOTEL is operated." In a preliminary-injunction hearing, Larry testified that "[w]e've owned the [Hotel] building for 16 years" and "we" developed it, and he characterized the Hotel as "[f]uture for my family." The brothers' counsel thereafter asked his clients to review a proposed form of preliminary-injunction order that included a finding that "Plaintiffs own and operate the Jerome Grand Hotel." Larry apparently did not object, and the court ultimately entered an order that included that finding. Media coverage of the dispute referred to Larry and Bob as the Hotel's owners, and in a "Press release" email Larry stated: "The owners of the Jerome Grand Hotel (Bob and Larry Altherr) would like to inform you of the current status with the pending lawsuit . . . ." When the case eventually settled in 2013, both brothers signed the settlement agreement. In some places the settlement agreement directed payment to and imposed obligations on the brothers collectively, but a separate provision specified that the payment would be made to "Larry A. Altherr dba Jerome Grand Hotel." According to Larry, his characterizations of Bob as an owner during the litigation were a mistake.

¶10 In 2012, a couple who had stayed at the Hotel brought an action against Larry and Bob, alleging that Bob had committed a sexual assault. The complaint alleged that Bob had represented himself as the Hotel's owner but that Larry was the true owner. Larry admitted that allegation; Bob, in a separate answer by separate counsel, denied the allegation and stated: "these Defendants are owners to the Jerome Grand Hotel."

¶11 In 2014, Larry barred Bob from continuing to participate in the Hotel's business. Larry thereafter offered to pay Bob a monthly sum and to give Bob's wife a 49% share of the Hotel or its sale proceeds upon Larry's death or the Hotel's sale. Bob rejected the offer.

¶12 Based on the foregoing, the superior court granted Larry's motion for summary judgment. The court held:

> Robert did not offer written evidence of an ownership interest in the real or personal property of the Hotel. . . .
>
> In order for Robert to prove an ownership interest in the Hotel's real and personal property, he must produce a promise, a writing, or some memorandum thereof signed by Larry or some authorized person. A.R.S. § 44-101. Robert has

failed to do so. Robert's further allegations of a partnership defies [sic] logic and common sense when one considers 7 years earlier the brothers had a written buyout of the partnership. Out of the blue, in 2007, Robert becomes a 50/50 partner, Larry quickly resigns over a family dispute, and he later returns as a 50/50 partner. All of this without even a "napkin" agreement. Robert's circumstantial evidence does not raise a scintilla of proof supporting the allegation of a verbal partnership.

. . . .

Even though it might be said that Robert had raised a scintilla of evidence or a slight doubt, the evidence in this case is such that, if produced at trial, the trial judge would have been required to direct a verdict in favor of Larry. *Orme School*, supra.

¶13        Bob appeals.

## DISCUSSION

¶14        We review the grant of summary judgment de novo, viewing the evidence and reasonable inferences in the light most favorable to the non-moving party. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12 (2003). A party is entitled to summary judgment only when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). The existence of a scintilla of evidence in the non-movant's favor cannot forestall summary judgment—"affidavits that contain inadmissible evidence, that are internally inconsistent, that tend to contradict the affiant's sworn testimony at deposition, and similar items of evidence may provide a 'scintilla' or create 'the slightest doubt' and still be insufficient to withstand a motion for summary judgment." *Orme School v. Reeves*, 166 Ariz. 301, 309 (1990). But the court may not grant summary judgment based on credibility determinations or a weighing of the evidence. *Id.* "[S]ummary judgment should not be used as a substitute for jury trials simply because the trial judge may believe the moving party *will* probably win the jury's verdict, nor even when the trial judge believes the moving party *should* win the jury's verdict." *Id.* at 310.

¶15        Here, each of the claims at issue was predicated on the existence of a partnership between Larry and Bob. Arizona's version of the Revised Uniform Partnership Act ("RUPA") provides in general that, "the association of two or more persons to carry on as co-owners a business for

profit forms a partnership, whether or not the persons intend to form a partnership." A.R.S. § 29-1012(A). Shared profits create a presumption of partnership, unless the shared profits serve as payment for employee or independent-contractor services, debt, rent, annuity or retirement benefits owed to a deceased or retired partner, interest or other charges on a loan, or the sale of goodwill. A.R.S. § 29-1012(C)(3). But the sharing of gross returns is not itself dispositive regarding the existence of a partnership, and neither is shared property ownership, even if the co-owners share profits, unless a written partnership agreement provides that the property is partnership property. A.R.S. § 29-1012(C)(1)–(2).

¶16         Citing the statute of frauds, A.R.S. § 44-101, the superior court held that Bob was required to show a written partnership agreement. But the statute of frauds does not include partnership agreements among those requiring signed writings as a condition to a civil action, and nothing in the partnership alleged by Bob otherwise triggers the statute of frauds—for example, Bob did not claim that the partnership was predicated on a transfer of real property. *See* A.R.S. § 44-101; *see also Turley v. Ethington*, 213 Ariz. 640, 644, ¶ 14 (App. 2006) ("We first note that the Turleys' claim for profits based on an oral partnership agreement, not involving a transfer of an interest in real property, would not be within the statute of frauds in any event."). Further, nothing in the RUPA requires a written partnership agreement. *See* A.R.S. § 29-1012; *see also Myrland v. Myrland*, 19 Ariz. App. 498, 502 (1973) (recognizing that under previously applicable Uniform Partnership Act, which defined partnership as "an association of two or more persons to carry on as co-owners a business for profit," a "[l]ack of partnership documentation is not the critical factor as a partnership may be formed by an oral agreement" (citations omitted)). To the contrary, A.R.S. § 29-1012 contemplates that partnership is the default business form when the parties have associated to carry on as co-owners.

¶17         The critical inquiry under the RUPA, therefore, is whether Larry and Bob carried on as co-owners. We conclude that the undisputed evidence does not compel a finding that no partnership existed. Some of the undisputed evidence, such as the absence of partnership tax filings, weighs in favor of such a finding. But the majority of the evidence presented is simply inconclusive regarding whether the parties have a partnership — the fact that Larry owned and assumed debts on the real property, for example, could exist under either a sole-proprietorship or a partnership scenario. And other undisputed evidence directly supports Bob's theory that there was a partnership. Most meaningfully, Larry identified Bob as a co-owner of the Hotel not only in a press release regarding the lawsuit against the Town of Jerome, but in a pleading that he

verified in that action, which the brothers brought jointly on the Hotel's behalf through shared counsel. The superior court's conclusion that Bob's account of the alleged partnership's formation "defie[d] logic and common sense" was an improper credibility determination in the summary-judgment context.

¶18 A reasonable jury may well conclude that the brothers never formed a partnership. But the record does not support entry of judgment to that effect as a matter of law. No written agreement is required. And though the fact that parties have held themselves out as partners is itself insufficient to create a partnership, there are sufficient facts on this record from which a reasonable jury could find the creation of a partnership.

## CONCLUSION

¶19 We reverse the entry of summary judgment, and we remand for further proceedings. In exercise of our discretion, we deny both parties' requests for attorney's fees under A.R.S. § 12-341.01.

