IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

KB HOME TUCSON, INC., an Arizona corporation, *Appellant*,

*v.*

THE CHARTER OAK FIRE INSURANCE COMPANY; TRAVELERS
PROPERTY CASUALTY INSURANCE COMPANY; DRACHMAN LEED
INSURANCE INC., an Arizona corporation; AMERICAN E&S
INSURANCE BROKERS OF CALIFORNIA, INC., a foreign corporation,
*Appellees*.

No. 1 CA-CV 12-0681
FILED 11-25-2014

Appeal from the Superior Court in Maricopa County
No. CV2007-007842 and CV2008-017049
(Consolidated)
The Honorable Mark H. Brain, Judge

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

COUNSEL

Dioguardi Flynn, LLP, Scottsdale
By John P. Flynn and Peter J. Moolenaar
*Counsel for Appellant*

Morales Fierro & Reeves, Phoenix
By William C. Reeves
*Counsel for Appellees Charter Oak and Travelers*

The Hassett Law Firm, PLC, Phoenix
By Myles P. Hassett and Julie K. Moen
*Counsel for Appellee Drachman Leed*

Pak & Moring, PLC, Scottsdale
By S. Gregory Jones
*Counsel for Appellee American E&S*

DeCiancio Robbins, PLC, Tempe
By Christopher Robbins
*Counsel for Amicus Curiae IIABAZ*

Lorber Greenfield & Polito, LLP, Tempe
By Holly P. Davies
*Counsel for Amicus Curiae Leading Builders of America*

Newmeyer & Dillion, LLP, Newport Beach, CA
By Alan H. Packer, Bonnie T. Roadarmel, Clayton T. Tanaka
and Susannah M. Eichele
*Co-Counsel for Amicus Curiae Leading Builders of America*

---

**OPINION**

Judge Kent E. Cattani delivered the opinion of the Court, in which Presiding Judge Maurice Portley and Judge John C. Gemmill joined.

---

**C A T T A N I**, Judge:

¶1        KB Home Tucson, Inc. ("KB") appeals from the entry of summary judgment in favor of The Charter Oak Fire Insurance Company and Travelers Property Casual Insurance Company (collectively, "Charter Oak") on KB's claims for declaratory relief, breach of contract, and breach of the covenant of good faith and fair dealing. KB also appeals from the entry of summary judgment in favor of Drachman Leed Insurance, Inc. ("Drachman Leed") and American E&S Insurance Brokers of California, Inc. ("American E&S") on KB's claims for negligence, negligent misrepresentation, and fraud. All of the claims relate to whether KB was entitled to coverage as an "additional insured" under insurance policies issued to a subcontractor hired by KB. For reasons that follow, we reverse the entry of judgment in favor of Charter Oak, but affirm the entry of judgment in favor of Drachman Leed and American E&S.

**FACTS AND PROCEDURAL BACKGROUND**

**¶2**        KB hired GRG Construction Co., Inc. ("GRG") in May 1999 to perform work at a residential subdivision in Tucson. The contractual relationship continued for approximately four years. Charter Oak provided liability coverage for GRG, including "additional insured" coverage for any person or entity GRG was obligated to cover by virtue of a written contract or agreement. Drachman Leed and American E&S were GRG's insurance agents/brokers who—at GRG's direction—issued Certificates of Insurance requested by KB relating to GRG's policy with Charter Oak and with another insurer, Evanston Insurance Company ("Evanston").

**¶3**        Charter Oak issued two annual general liability policies to GRG during the relevant time periods. The policies included a blanket additional insured endorsement, which provided as follows:

> WHO IS AN INSURED – (Section II) is amended to include any person or organization you are required to include as an additional insured on this policy by a written contract or written agreement in effect during this policy period and executed prior to the occurrence of any loss.

**¶4**        GRG's written contracts with KB provided, in pertinent part:

> 7.        All work and materials must be acceptable to and comply with all rules, regulations and requirements of [KB].

> 7.[1]        [GRG] shall protect and indemnify [KB] from any claims, liability, or losses suffered by anyone wholly or partially through the negligence of [GRG] or any of his agents or employees. [KB] shall retain a reasonable portion of all payments due [GRG] until such claims are settled or suitable indemnity arrangements acceptable to [KB] are provided by [GRG].

> 8.        [GRG] shall purchase and pay for all employer's liability and workman's compensation insurance required by the State in which this work is performed and shall also purchase and pay for public liability, property damage, products liability, and product performance insurance [in specified amounts]. Certificates of coverage or copies of such

---

[1]        The 1999 agreement contained two paragraphs numbered "7."

policies shall be furnished to [KB] prior to the commencement of work.

¶5          After the parties signed the contract, KB sent annual letters to GRG describing its insurance requirements. These letters detailed the minimum coverage mandated by KB and stated that KB "must be named as an Additional Insured on the General Liability Policy." In response, GRG directed Drachman Leed to provide KB a copy of Charter Oak's above-described blanket additional insured endorsements, together with certificates of liability insurance listing KB as an additional insured for COMMERCIAL GENERAL LIABILITY and AUTOMOBILE insurance.

¶6          Evanston also issued two annual policies insuring GRG for the relevant time periods. Drachman Leed provided KB with certificates of liability insurance for GRG's Evanston policies, obtained through producer/broker American E&S. These informational certificates showed KB as an additional insured "As per written contract," and named KB as "certificate holder," stating, "Any and all jobs. Certificate Holder is an Additional Insured as per written contract, General Liability Coverage, as respect work performed by the named insured."

¶7          The Evanston policies similarly contained blanket additional-insured endorsements, which referenced the "Name of Person or Organization: AS PER WRITTEN CONTRACT," and provided:

> WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule, but only with respect to liability arising out of "your Work" for that insured by or for you.

¶8          In May 2001, the City of Tucson asserted a claim against KB alleging deficiencies in streets and sidewalks within KB's residential subdivision project. KB sued GRG and other subcontractors for reimbursement for repair costs and attorney's fees incurred in defending against the City's claims. In February 2005, several homeowners in the project sued KB for damage to their homes allegedly resulting from construction defects. KB tendered its defense to Charter Oak on all of the claims and to Evanston on the homeowners' claims.

¶9          Charter Oak disclaimed coverage, stating that KB did not qualify as an additional insured under the blanket additional-insured endorsement because there was no written contract or agreement requiring that GRG add KB as an additional insured. Similarly, Evanston disclaimed coverage for the homeowners' suit because the underwriting file and

4

policies did not contain an additional-insured endorsement, and because any such endorsement would not have conveyed additional-insured coverage in the absence of a written contract requiring that KB Home be made an additional insured.

¶10　　　　KB filed a complaint against Evanston for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing. KB subsequently amended its complaint to include claims against Drachman Leed and American E&S for negligence, negligent misrepresentation, and fraud.[2] KB also filed a separate action against Charter Oak for declaratory relief, breach of contract, and breach of the implied covenant of good faith and fair dealing. In January 2010, KB settled its claims against Evanston, and the superior court subsequently consolidated the Charter Oak, Drachman Leed, and American E&S actions.

¶11　　　　Charter Oak, Drachman Leed, and American E&S filed separate motions for summary judgment on all of KB's claims. Among other arguments, Charter Oak asserted that KB did not qualify as an additional insured under the policies issued to GRG. Drachman Leed argued primarily that (1) the firm did not owe a duty of care to KB because KB was not a client; and (2) the firm provided accurate insurance information to KB and, therefore, did not misrepresent coverage or commit fraud. American E&S argued that KB had not shown: (1) a misrepresentation of coverage; (2) that American E&S was aware of the falsity of any alleged misrepresentation; or (3) KB's right to rely on the alleged misrepresentations. American E&S also joined Drachman Leed's motion for summary judgment. After briefing and oral argument, the superior court ruled in favor of Charter Oak, Drachman Leed, and American E&S, and directed entry of final judgment in favor of all three defendants.

¶12　　　　KB timely appealed. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).[3]

---

[2]　　　The claims against Drachman Leed and American E&S related only to the Evanston policies.

[3]　　　Absent material revisions after the relevant date, we cite a statute's current version.

## DISCUSSION

**¶13** KB challenges the grant of summary judgment in favor of each named defendant.[4] Summary judgment is appropriate only if there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 305, 802 P.2d 1000, 1004 (1990).

**¶14** We review de novo the superior court's grant of summary judgment, viewing the facts in the light most favorable to the party against whom judgment is entered. *United Bank of Arizona v. Allyn*, 167 Ariz. 191, 193, 195, 805 P.2d 1012, 1014, 1016 (App. 1990). We will affirm summary judgment if it is correct for any reason supported by the record, even if not explicitly considered by the superior court. *See Mutschler v. City of Phx.*, 212 Ariz. 160, 162, ¶ 8, 129 P.3d 71, 73 (App. 2006).

## I. Charter Oak.

**¶15** Charter Oak's obligation to provide additional-insured general liability coverage to KB turns on whether GRG was required under a written contract or agreement to include KB as an additional insured. KB argues the superior court erred by finding that there was no such contract or agreement. KB asserts in particular that its written instructions to GRG regarding additional-insured coverage, coupled with GRG's conduct in conformity with those instructions, is evidence from which a reasonable fact-finder could find the existence of an "executed" "written agreement" between KB and GRG. KB further asserts that a reasonable fact-finder could conclude that GRG's contract with GRG obligated GRG to comply with KB's "rules, regulations and requirements," which, as evidenced by other writings, included an agreed-upon requirement that KB be named as an additional insured under GRG's insurance policies. In contrast, Charter Oak argues that coverage was not contemplated under GRG's contract with KB, and further asserts that during the life of the contract, KB "concocted a plan of surreptitiously attempting to supplement its admittedly (and strategically) deficient contract" in an effort to "unilaterally modify the subcontract."

**¶16** We conclude that a reasonable fact-finder could find that KB had an "executed" written agreement with GRG requiring GRG to provide

---

[4] Independent Insurance Agents and Brokers of Arizona and Leading Builders of America submitted amicus curiae briefs, which this court has considered.

additional-insured coverage. Although there is not a specific document signed by both parties, written documents prepared by or at the direction of KB and GRG establish such an agreement. KB's correspondence makes clear the requirement that GRG add KB as an additional insured on its general liability policies, and GRG carried out and completed the agreement by directing its agents to provide certificates of insurance listing KB as an additional insured. *See* Black's Law Dictionary (9th ed. 2009) (defining "execute" as "To perform or complete (a contract or duty)" or as "To make (a legal document) valid by signing; to bring (a legal document) into its final, legally enforceable form").

¶17 Moreover, even assuming the above-described correspondence did not establish the existence of a written agreement, GRG's signed contract with KB specifically required that GRG comply with KB's "rules and requirements." In light of the subsequently executed written documents evidencing an additional-insured requirement, we conclude that there is evidence from which a reasonable juror could find that the subsequently-discussed rules and requirements were incorporated into the contract.

¶18 We note that under GRG's insurance policies with Charter Oak, GRG was not required to obtain Charter Oak's permission before obligating Charter Oak to provide additional-insured coverage to contractors for which GRG was providing services. The policies instead contemplated that Charter Oak would make an after-the-fact assessment (through evidence of a written contract or agreement) of whether GRG was obligated to provide additional-insured coverage to such contractors.

¶19 GRG has never disputed that it was required, per the written subcontract and KB's insurance requirements, to add KB as an additional insured on GRG's general liability insurance policies. A GRG representative in fact testified that GRG understood that it needed to comply with KB's insurance requirements as a condition to payment under its contract with KB and as a condition to continuing to work with KB. But even without such testimony, the subcontract at issue mandated compliance with KB's rules and requirements. And the written correspondence between KB and GRG, coupled with GRG's conduct in response to that correspondence, clearly evidenced an understanding and agreement that one of those requirements was that KB be named as an additional insured on GRG's Charter Oak policies.

¶20 KB did not "unilaterally modify" its contract with GRG by clarifying the additional-insured requirement. The contract specifically

noted a duty to comply with other "rules and requirements," and nothing about GRG's response to KB's correspondence detailing the additional-insured requirement suggests that GRG was surprised in any way or believed that an additional-insured requirement was beyond the scope of their contractual agreement. Moreover, GRG's contract with Charter Oak specifically contemplated that additional-insured coverage would be provided in connection with GRG's work for any number of contractors. Thus, the additional-insured requirement did not unilaterally change the responsibilities of KB or GRG or otherwise modify their subcontract.

¶21 Nor did KB's exercise of the "rules, regulations, and requirements" provision of the contract alter the nature of Charter Oak's relationship with and responsibilities to GRG. As noted previously, Charter Oak did not require pre-approval to add additional insureds to its policy with GRG. Charter Oak thus understood that GRG would be adding as additional insureds individuals or entities that hired GRG to perform work on their behalf. And the additional-insured language specified that Charter Oak was only providing coverage "as respect work performed by the named insured [GRG]." Thus, the "requirements" referenced in GRG's contract with KB and spelled out in KB's correspondence with GRG did not unfairly deprive Charter Oak of any anticipated right under its insurance policies with GRG or expand its obligations to provide coverage based on GRG's alleged negligence.

¶22 Charter Oak nevertheless asserts that the superior court correctly applied *Lennar Corp. v. Auto-Owners Ins. Co.*, 214 Ariz. 255, 151 P.3d 538 (App. 2007), in finding that KB was not entitled to coverage. In *Lennar*, this court held that "the requirement that [a contractor] indemnify [a developer] is not an agreement that [the contractor] obtain insurance that could provide a defense for [the developer]." *Id*. at 267, ¶ 45, 151 P.3d at 550. But the contract at issue in *Lennar* did not contain a provision specifying additional obligations; nor were there writings and conduct evidencing an agreement to add the contracting developer as an additional insured on the contractor's insurance policies. Thus, *Lennar*'s holding is not controlling here.[5]

---

[5] In *Lennar*, this court noted that this type of dispute can be avoided if a contract between a contractor and subcontractor includes more specific language delineating additional-insured status. 214 Ariz. at 268 n.15, 151 P.3d at 551 n.15. But the KB–GRG contract predated the *Lennar* decision by several years.

**¶23** Although Arizona appellate courts have not addressed the issue before us, case law from other jurisdictions supports the conclusion that KB was entitled to coverage in this case. For example, in *Mid-Am Builders, Inc. v. Federated Mutual Ins. Co.*, a subcontractor's insurance company conditioned additional-insured endorsements to the subcontractor's policy on the existence of a "written contract" requiring the subcontractor to name the other party as an additional insured. 194 F. Supp. 2d 822, 824 (C.D. Ill. 2002). The contract between the subcontractor and the contractor did not contain such a requirement, but a contemporaneous transmittal letter asked the subcontractor to issue a certificate of insurance naming the general contractor as an additional insured. *Id.* at 823–24. The subcontractor thereafter called its insurance agent to request that the general contractor be added as an additional insured, and the subcontractor provided the general contractor with the requested certificate of insurance. *Id.* at 824. The district court found that notwithstanding the "written contract" requirement in the endorsement, the general contractor was entitled on summary judgment to additional-insured status because the transmittal letter, together with the subcontract, provided sufficient evidence of mutual assent to allow for additional-insured status. *See id.* at 827 (noting that under Illinois law, when instruments are executed together as part of one transaction or agreement, they are to be construed as a single instrument).

**¶24** Here, additional-insured status was conditioned on the existence of a written contract *or* a written *agreement*, which as detailed above could be established without a specific document signed by both parties. Moreover, although KB's correspondence regarding rules and requirements was not contemporaneous with the contract, the contract referenced such rules and requirements. Thus, even assuming the written documents do not establish the existence of a separate written agreement, under *Mid-Am Builders*, the subsequent correspondence would be relevant to establish that the "rules and requirements" provision in KB's contract with GRG included an additional-insured requirement. *See also Mt. Hawley Ins. Co. v. Robinette Demolition, Inc.*, 994 N.E.2d 973, 983, ¶ 50 (Ill. App. Ct. 2013) (stating that certificates of insurance provide additional support for finding a written agreement that the parties intended to name other entities as additional insureds).[6]

---

[6] Other courts have rejected claims to additional-insured status under arguably similar circumstances. *See, e.g.*, *Certain Underwriters at Lloyd's of London v. Am. Safety Ins. Servs., Inc.*, 702 F. Supp. 2d 1169 (C.D. Cal. 2010).

**¶25** In sum, because there was written evidence from which a fact-finder could conclude either that (1) there was a written agreement between KB and GRG requiring GRG to include KB as an additional insured on GRG's general liability policies with Charter Oak, or (2) the "rules and requirements" provision in GRG's written contract with KB contemplated the type of requirement subsequently evidenced by written correspondence and completed conduct of the parties. Accordingly, we reverse the summary judgment granted in favor of Charter Oak.

## II. Drachman Leed and American E&S.

**¶26** KB argues that the superior court erred by granting summary judgment on KB's negligence, negligent misrepresentation, and fraud claims against Drachman Leed and American E&S. For reasons that follow, we affirm the superior court's rulings on those claims.

### A. Negligence.

**¶27** To establish negligence, a plaintiff must prove four elements: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach proximately caused the plaintiff's injury; and (4) resulting damages. *Gipson v. Kasey*, 214 Ariz. 141, 143, ¶ 9, 150 P.3d 228, 230 (2007). An action for negligence cannot be maintained in absence of a duty owed by a defendant to a plaintiff. *Id.* at ¶ 11.

**¶28** Here, KB could not establish a claim for negligence against Drachman Leed and American E&S because they did not owe a duty of care to KB. Absent special circumstances in which a foreseeable and specific third party is injured, insurance producers/agents owe no duty of care to third-party non-clients. *Napier v. Bertram*, 191 Ariz. 238, 242, ¶ 15, 954 P.2d 1389, 1393 (1998). Although such special circumstances may include an enhanced relationship between the insurance producer/agent and the non-client, the record here does not reflect such a relationship. Instead, Drachman Leed simply provided insurance information regarding GRG's policies in a normal business transaction through certificates and additional-insured endorsements to KB. *See Ferguson v. Cash, Sullivan & Cross Ins. Agency, Inc.*, 171 Ariz. 381, 385, 831 P.2d 380, 384 (App. 1991). *See*

---

But those cases, like *Lennar*, do not involve the type of contractual provision at issue here referencing additional rules and requirements, and they do not address correspondence from or at the direction of both parties evidencing an agreement to add a contractor as an additional insured on the subcontractor's insurance policy.

*also Gipson*, 214 Ariz. at 145, ¶ 19, 150 P.3d at 232; *Ferguson*, 171 Ariz. at 385, 831 P.2d at 384 (noting that the mere existence or discussion of third parties with the insured does not create a special relationship with the agent).

**¶29**        Moreover, even assuming Drachman Leed and/or American E&S owed some type of duty to KB as a third-party non-client, KB has not established a breach of duty, because Drachman Leed and American E&S simply provided certificates of insurance requested by their insured, but with the following proviso:

> THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

KB was provided a copy of the relevant insurance policies, and KB has not established that the defendants provided inaccurate information.  Thus, the superior court properly granted summary judgment in favor of Drachman Leed and American E&S on KB's negligence claim.

### B.        Negligent Misrepresentation.

**¶30**        "A claim for relief for negligent misrepresentation is one governed by the principles of the law of negligence.  Thus, there must be 'a duty owed and a breach of that duty before one may be charged with the negligent violation of that duty.'"  *Van Buren v. Pima Cmty. Coll. Dist. Bd.*, 113 Ariz. 85, 87, 546 P.2d 821, 823 (1976) (citation omitted).[7]  Here, as described above, neither Drachman Leed nor American E&S owed a duty to KB, a third-party non-client, and KB did not establish a misrepresentation.  *See supra* ¶¶ 24–27.  Under these circumstances, the superior court appropriately granted summary judgment against KB on this claim.

---

[7]        The elements of negligent misrepresentation are: (1) the defendant provided false information in a business transaction; (2) the defendant intended for the plaintiff to rely on the incorrect information or knew that it reasonably would rely; (3) the defendant failed to exercise reasonable care in obtaining or communicating the information; (4) the plaintiff justifiably relied on the incorrect information; and (5) resulting damage.  *Mur-Ray Mgmt. Corp. v. Founders Title Co.*, 169 Ariz. 417, 422–24, 819 P.2d 1003, 1008–09 (App. 1991).

### C. Fraud.

¶31 To prove fraud, a plaintiff must establish: "(1) [a] representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) [the speaker's] intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) [the hearer's] reliance on its truth; (8) [the hearer's] right to rely thereon; and (9) [the hearer's] consequent and proximate injury." *Nielson v. Flashberg*, 101 Ariz. 335, 338–39, 419 P.2d 514, 517–18 (1966).

¶32 We agree with the superior court that the certificates and endorsements delivered by Drachman Leed and American E&S truthfully indicated that KB was an additional insured if it had a written contract as required by the relevant insurance policies. Thus, KB's fraud claim fails for lack of a false statement.

¶33 KB argues that it established the requisite false statement because the certificate issued by Drachman Leed that referenced the additional-insured endorsement was not authorized by Evanston and was not in Evanston's underwriting file. But Evanston's denial of coverage was not based on those facts. Evanston's denial letter stated that the endorsement could not have conveyed additional-insured coverage because the KB–GRG subcontract "does not set forth any requirement that KB Home be made an additional insured, or be named as an additional insured, under the liability policy GRG was to procure." Accordingly, the superior court correctly entered summary judgment in Drachman Leed's favor on the fraud claim. Because the judgment was correct on this basis, we do not address KB's arguments regarding reliance and damages.

¶34 As to the judgment in favor of American E&S, KB acknowledged being unaware of any involvement by American E&S in GRG's policies with Evanston. As such, KB cannot now successfully claim that American E&S made any representations to KB, much less false representations on which KB relied. *See St. Joseph's Hosp. & Med. Ctr.*, 154 Ariz. 307, 312, 742 P.2d 808, 813. Thus, the superior court did not err by granting summary judgment in favor of American E&S.

## III. Attorney's Fees & Costs.

¶35 KB has requested its attorney's fees on appeal pursuant to A.R.S. § 12-341.01(A) and ARCAP 21(c). In our discretion, we award KB its reasonable attorney's fees relating to its arguments against Charter Oak upon compliance with ARCAP 21. American E&S also requests attorney's

fees on appeal pursuant to A.R.S. § 12-341.01(A). Because KB's tort claims against American E&S did not arise out of contract, we deny American E&S's fee request. *See Barmat v. John & Jane Doe Partners A-D*, 155 Ariz. 519, 524, 747 P.2d 1218, 1223 (1987). As the successful parties on appeal, KB is entitled to its costs relating to its claims against Charter Oak, and Drachman Leed and American E&S are entitled to their costs upon compliance with ARCAP 21.

## CONCLUSION

**¶36** For the foregoing reasons, we reverse the superior court's grant of summary judgment in favor of Charter Oak; vacate the court's award of costs, fees, and Rule 68 sanctions to Charter Oak; and remand for further proceedings consistent with this decision. We affirm the court's grant of summary judgment in favor of Drachman Leed and American E&S.



Ruth A. Willingham · Clerk of the Court
F I L E D : gsh