NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STANLEY F. STAZENSKI and PATRICIA STAZENSKI,
husband and wife, *Plaintiffs/Appellants*,

*v.*

J. JEFFREY COUGHLIN and HEIDI COUGHLIN, husband and wife;
J. JEFFREY COUGHLIN, PLLC, an Arizona professional limited liability
company; BOYLE, PECHARICH, CLINE, WHITTINGTON &
STALLINGS, P.L.L.C., an Arizona professional limited liability company,
*Defendants/Appellees*.

No. 1 CA-CV 14-0401

FILED 6-25-2015

Appeal from the Superior Court in Yavapai County
No.  P1300CV201200199
P1300CV201200200
P1300CV201200201
P1300CV201200202
(Consolidated)
The Honorable Patricia A. Trebesch, Judge

**AFFIRMED**

COUNSEL

Christopher Jacobson LLC, Phoenix
By Jay C. Jacobson
*Counsel for Plaintiffs/Appellants*

Broening Oberg Woods & Wilson PC, Phoenix
By James R. Broening, Kerry L. Beringhaus, Richard E. Chambliss, and
   Kevin R. Myer
*Counsel for Defendants/Appellees Coughlins & J. Jeffrey Coughlin PLLC*

Renaud Cook Drury Mesaros PA, Phoenix
By Denise J. Wachholz
*Counsel for Defendant/Appellee Boyle et al.*

---

## MEMORANDUM DECISION

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Lawrence F. Winthrop and Judge Samuel A. Thumma joined.

---

**K E S S L E R**, Judge:

**¶1**        Plaintiffs/Appellants Stanley and Patricia Stazenski ("Stazenskis") appeal the superior court's grant of summary judgment in favor of Defendants/Appellees J. Jeffrey and Heidi Coughlin ("Coughlin"), J. Jeffrey Coughlin, PLLC ("Coughlin Firm") (collectively "Coughlin Defendants"), and Boyle, Pecharich, Cline, Whittington & Stallings, PLLC ("Boyle Firm").  For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL HISTORY[1]

**¶2**        In 2005, before becoming Coughlin's clients, the Stazenskis bought a 431-acre parcel and a 10-acre parcel, with street addresses located on Mule Shoe Ranch Road and Iron Horse Road respectively, from the Lindahls for $1.2 million.  These contiguous parcels are accessed using Mule Shoe Ranch Road which crosses a neighbor's property. *Stazenski v. Lindahl*, 1 CA-CV 14-0001, 2015 WL 1456658, at *1, ¶¶ 2-4, n.2 (Ariz. App. Mar. 31, 2015) (mem. decision).

**¶3**        Several years before the Stazenskis' 2005 purchase, Coughlin represented the Lindahls in obtaining a quit claim deed for a grant of an easement from the neighbor ("Quit Claim Easement") for use of Mule Shoe Ranch Road.  The neighbor had already acknowledged the existence of a

---

[1] We view the facts, including legitimate inferences, in the light most favorable to the Stazenskis. *See Walk v. Ring*, 202 Ariz. 310, 312, ¶ 3, 44 P.3d 990, 992 (2002).

prescriptive easement, but the Quit Claim Easement clarified the width of the easement. *Id.* at *1, ¶ 3. The Quit Claim Easement was properly recorded and before the Stazenskis purchased the properties in 2005 the Lindahls gave them a copy of the recorded Quit Claim Easement. *Id.* at *5, ¶ 19.

**¶4** In February 2006, the Stazenskis hired Coughlin, who was working at the Boyle Firm, for advice about the easement and access to the parcels. According to the Stazenskis, Coughlin did not disclose to them that the recorded Quit Claim Easement was defective because it allegedly was nontransferable and fell 212 feet short of the parcels.

**¶5** In 2007, without consulting Coughlin, the Stazenskis borrowed $920,000 from Country Bank using one or both of the two parcels as collateral and granted a deed of trust to Country Bank to secure the loan ("Trust Deed").[2] The Stazenskis used part of the loan to buy an adjacent 13-acre parcel from the Havens for $300,000. Like the 431-acre and 10-acre parcels, the 13-acre parcel was also accessed using Mule Shoe Ranch Road via the prescriptive easement. *Id.* at *1-2, ¶¶ 2, 4, 8. However, the Quit Claim Easement did not apply to the 13-acre parcel. *Id.* at *6, ¶ 20.

**¶6** The Stazenskis' loan matured in 2009, they failed to pay the loan off, and the bank noticed a trustee sale for the property described in

---

[2] The first page of the Trust Deed states that the property is described in Exhibit A to the trust. Underneath that statement, the Trust Deed states the property is commonly known as 3050 Mule Shoe Ranch Road and gives the tax identification number for that property, which is the identifying information for the 431-acre parcel. Exhibit A, however, lists two parcels (Parcel I and II) by their legal descriptions without providing street addresses or tax identification numbers. Exhibit A describes both the 431-acre parcel and the 10-acre parcel. Exhibit A to the Trust Deed is identical to Exhibit A to the deed the Stazenskis received from the Lindahls when buying the 431-acre and 10-acre parcels in 2005.

the Trust Deed ("Sale Notice").[3]  Because the Sale Notice included both the 431-acre and 10-acre parcels, but according to the Stazenskis was not supposed to include the 10-acre parcel, the Stazenskis hired Coughlin, who by then had opened his own law firm, to object to Country Bank's efforts to sell the 10-acre parcel.

¶7          Without Coughlin's involvement, the day before the scheduled trustee sale, the Stazenskis entered a March 24, 2010 agreement with Country Bank. The Bank agreed to not pursue the Stazenskis for any deficiency on the loan if the trustee sale netted less than the balance owed ("Deficiency Agreement").[4] The Deficiency Agreement was conditioned upon the Stazenskis' payment of $25,000 to Country Bank and the trustee sale netting at least $930,000.[5]  The Stazenskis signed the agreement, paid Country Bank $25,000, and the next day a third party (the "Sachs") bought both the 431-acre and 10-acre parcels for $930,001 at the trustee sale.

¶8          In July 2010, the Stazenskis learned that the recorded Quit Claim Easement for the 431-acre and 10-acre parcels was not valid because

---

[3] Like the Trust Deed, the Sale Notice stated the property for sale was 3050 Mule Shoe Ranch Road, listed the tax identification number for the 431-acre parcel, and also incorporated an attached Exhibit A providing the legal description.  Exhibit A to the Sale Notice had the same description of Parcel I and II as Exhibit A attached to the Trust Deed that listed the legal descriptions for both the 431-acre and the 10-acre parcels.

[4] The subject line of the Deficiency Agreement referenced both the 431-acre parcel and 10-acre parcel by their street addresses on Mule Shoe Ranch Road and Iron Horse Road respectively.  It also referenced the Sale Notice described *supra* at Footnote 3.

[5] By the time of the Deficiency Agreement, the Stazenskis owed approximately $1,003,000.

it allegedly did not provide complete access to the two parcels and might not have been transferable with the land to them as the new owners.[6]

¶9            In February 2012, the Stazenskis filed complaints against the Lindahls, Havens, a real estate agent and her brokerage firm, as well as the Coughlin Defendants and the Boyle Firm.[7]  As it relates to the Boyle Firm and Coughlin Defendants, the Stazenskis asserted three claims: (1) malpractice, (2) negligent misrepresentation, and (3) breach of fiduciary duty.  Each claim is premised on various alleged breaches of the standard of care by Coughlin.  Ultimately, the Stazenskis contended that those breaches resulted in Coughlin: (1) failing to advise the Stazenskis that the recorded Quit Claim Easement was defective thus causing them to buy the 13-acre parcel with no valid easement for access; (2) failing to advise them to make title insurance claims on the title policy covering the 431-acre and 10-acre parcels so those claims became time-barred; and (3) abandoning the

---

[6]  It is unclear in the record whether the Stazenskis were referring to Quit Claim Easement access to all three properties or just access to the 431-acre and 10-acre parcels. For purposes of resolving this appeal, however, it is inconsequential because we have previously concluded they had access to all three parcels through the prescriptive easement. *Lindahl*, 2015 WL 1456658, at *1-2, ¶¶ 2, 4, 8, n.2.

[7] The matters were eventually consolidated and final judgments as to all defendants were entered at different times. The claims involving the Lindahls and Havens concluded previously, were separately appealed and were resolved on March 31, 2015, affirming summary judgment granted in favor of the Lindahls and Havens on the basis that the Stazenskis had access to all three parcels by a prescriptive easement and had marketable title to those parcels. *Lindahl*, 2015 WL 1456658, at *1-2, 5, ¶¶ 4-8, 17.  That appeal became final on May 7, 2015, when the mandate issued. *See Tucson Gas & Elec. Co. v. Superior Court In & For Pima County*, 9 Ariz. App. 210, 212, 450 P.2d 722, 724 (1969) (stating "the final decision of an intermediate appellate court, when not reviewed or otherwise set aside by an appellate court of higher authority, has the same finality as a decision of the highest court"). After the superior court's final judgment in this matter, a judgment on the claims against the real estate agent and her firm was entered and has been separately appealed and is not at issue here.

Stazenskis and failing to object to the inclusion of the 10-acre parcel in the trustee sale.[8]

## I.     Summary Judgment for Coughlin and the Boyle Firm Based on a Lack of Damages Because None of the Properties are Landlocked

¶10     All defendants filed a joint motion for summary judgment ("MSJ") arguing that the Stazenskis had actual or constructive notice of any alleged defects in/of the recorded Quit Claim Easement, but in any event were not damaged because all three parcels were accessible and not landlocked, the 13-acre parcel by a prescriptive easement and the 431-acre and 10-acre parcels by both a prescriptive easement and the recorded Quit Claim Easement. In addition, the Boyle Firm filed a separate MSJ in which Coughlin joined. In that separate motion, they also argued that they had no duty to the Stazenskis in drafting the Quit Claim Easement, that the Quit Claim Easement did not pertain to the 13-acre parcel, that none of their alleged acts caused any damages based on the 2005 or 2007 purchases or the dealings with Country Bank, and that the claims were barred by the statute of limitations as to the Boyle Firm.

¶11     The Stazenskis opposed the MSJ, asserting Coughlin caused "$300,283 in damages in April of 2007 when the Stazenskis bought the [13-acre] parcel (which would not have occurred with proper disclosures [from] Coughlin)." Specifically, the Stazenskis argued that because Coughlin did not disclose that the "recorded easement" was defective, the Stazenskis bought the 13-acre parcel and "assumed that they could use the easement to get to this new parcel." The Stazenskis attached a report from their standard of care expert, containing opinions based upon Coughlin's

---

[8] The Stazenskis have abandoned two other alleged sources of damages—sale of the 431-acre and 10-acre parcels to the Sachs, and lost title insurance claim for the 13-acre parcel. In their complaint, the Stazenskis alleged that they were damaged by the misconduct of the Boyle Firm and the Coughlin Defendants in the sale of the 431-acre and 10-acre parcels to the Sachs. Eventually, the Stazenskis clarified that they were not asserting any damages against Coughlin related to the sale of the properties to the Sachs, and the superior court entered summary judgment for Coughlin. The Stazenskis do not appeal the court's judgment related to that issue. In addition, the Stazenskis alleged in their complaint that they were damaged by Coughlin not advising them to file a claim on the title insurance policy for the 13-acre parcel's alleged lack of access. The Stazenskis do not make any claim for such alleged loss in their opening brief and we have found no evidence in the record to support such a claim.

failures in relation to the allegedly defective Quit Claim Easement. They attached a report from their damages expert, stating that "without legal easement for access" the Stazenskis would not have obtained the Country Bank loan using their existing property as collateral nor bought the 13-acre parcel. Their damages expert also contended that the Stazenskis incurred an additional $4000 in damages in attorneys' fees apparently related to the purchase of the 13-acre parcel, although the exhibit referenced is not in the statement of facts filed by the Stazenskis. Thus, the claimed damages were premised on the lack of access to the parcels.

¶12 The Stazenskis asserted $150,000 in damages "caused by Coughlin in February of 2006 for failure to advise them to make a title claim" on the policy covering the 431-acre and 10-acre parcels. They attached a report from their title insurance expert, who opined they "would have had a valid claim against the title company [as to the 431-acre and 10-acre parcels] for up to $1.2 million because the title policy specifically insures the right of access to and from their property and, according to the appraisal of [another expert], the value of the property without an easement is $0."[9] Thus, the claim as to the title insurance was premised on the lack of access as well.

¶13 In reply, the Boyle Firm and Coughlin Defendants argued that even assuming some defect of the recorded Quit Claim Easement, the policy did not insure the Quit Claim Easement and only insured losses based on lack of access. They attached a report from a their own expert that opined: (1) there was access through Iron Horse Road directly to the 10-acre parcel; (2) there was no actual damage or loss that would trigger the policy; and (3) even assuming the policy was triggered, the title company would have opted to cure the defect and not made a payment to the Stazenskis.[10] The Boyle Firm also noted there was no dispute that the Quit Claim Easement does not pertain to the 13-acre parcel.

¶14 After oral argument the superior court determined the parcels were not landlocked and granted judgment for Coughlin and the Boyle

---

[9] The appraisal determined the market value of each of the three parcels with and without an easement.

[10] The Stazenskis provided another report from their title insurance expert stating his opinions were unchanged upon review of the defense expert report.

Firm finding the Stazenskis could not make a prima facie case on any claims based on Coughlin's work while at the Boyle Firm due to a lack of evidence of resulting damages.[11] The court did not enter a final appealable judgment. *See* Ariz. R. Civ. P. 54(b).

## II. Summary Judgment for the Coughlin Defendants Related to the Inclusion of the 10-Acre Parcel in the Trustee Sale

¶15 The Coughlin Defendants moved for summary judgment on the claim dealing with the trustee's sale arguing that the Stazenskis voluntarily entered an agreement with Country Bank conditioned on the sale of both the 431-acre and 10-acre parcels and benefitted from the agreement. The Coughlin Defendants contended they could not be held liable for acts over which Coughlin had no involvement or control.

¶16 The Stazenskis responded, arguing that there were disputed material facts, but did not address the Coughlin Defendants' argument that by voluntarily entering the Deficiency Agreement without Coughlin's involvement the Stazenskis compromised their claim that they were damaged by Coughlin's alleged failure to object to the sale of the 10-acre parcel.

¶17 The superior court determined that the Stazenskis had no claim against the Coughlin Defendants for failing to object to the inclusion of the 10-acre parcel in the trustee sale because the Stazenskis "of their own volition, entered into a deficiency agreement with Country Bank to proceed with the trustee's sale that included both parcels."

¶18 The court entered a final appealable Rule 54(b) judgment in favor of the Coughlin Defendants, and the Boyle Firm. The Stazenskis filed a timely notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) (Supp. 2014).

## DISCUSSION

¶19 The Stazenskis assert that evidence presented to the superior court was sufficient to state a claim and survive summary judgment as to every claim asserted against the Coughlin Defendants and the Boyle Firm.

---

[11] The court also granted judgment for the Lindahls and Havens as to all claims against them and partial summary judgment for the real estate agent.

¶20 We review *de novo* whether summary judgment is warranted, including whether genuine issues of material fact exist and whether the superior court properly applied the law. *Dreamland Villa Cmty. Club, Inc. v. Raimey*, 224 Ariz. 42, 46, ¶ 16, 226 P.3d 411, 415 (App. 2010). We will affirm the superior court if its determination "is correct for any reason, even if that reason was not considered" by the court. *Hill v. Safford Unified Sch. Dist.*, 191 Ariz. 110, 112, 952 P.2d 754, 756 (App. 1997); *accord Gary Outdoor Adver. Co. v. Sun Lodge, Inc.*, 133 Ariz. 240, 242, 650 P.2d 1222, 1224 (1982) (stating "trial court will be affirmed when it reaches the correct conclusion even if it does so for an incorrect reason"). Summary judgment "should be granted if the facts produced in support of the claim or defense have so little probative value, given the quantum of the evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). A "scintilla" of evidence, or evidence that creates the "slightest doubt," is insufficient to withstand summary judgment. *Id.*

¶21 Each of the Stazenskis' claims for legal malpractice, negligent misrepresentation and breach of fiduciary duty require that the breach of the standard of care cause resulting damages. *Glaze v. Larsen*, 207 Ariz. 26, 29, ¶ 15, 83 P.3d 26, 29 (2004) (stating party asserting legal malpractice must prove defendant's negligence caused the injury; actual injury/damage caused by lawyer's negligence is critical to claim of legal malpractice); *Lane Title & Trust Co. v. Brannan*, 103 Ariz. 272, 278, 440 P.2d 105, 111 (1968) (stating a claim of breach of fiduciary duty requires proving that the breach caused the loss); *KB Home Tucson, Inc. v. Charter Oak Fire Ins. Co.*, 236 Ariz. 326, 332-33, ¶ 30, 340 P.3d 405, 411-12 (App. 2014) (stating elements of claim for negligent misrepresentation and reaffirming that claim is governed by principles of law of negligence requiring damages resulting from breach of duty). The Stazenskis make broad arguments that sufficient evidence was presented to show genuine issues of material fact as to breach of duty, and we assume for purposes of appeal that there were genuine factual issues about the standard of care and any breach thereof. The dispositive issue central to the viability of these claims, however, is whether such breaches caused any damages to the Stazenskis.

## I. Collateral Estoppel

¶22 We allowed the parties to submit supplemental briefs addressing the effect of *Stazenski v. Lindahl*, 1 CA-CV 14-0001, 2015 WL 1456658 (Ariz. App. Mar. 31, 2015) (mem. decision) on the Stazenskis' appeal in this matter and whether collateral estoppel applies to any issues on appeal. In their supplemental brief, the Stazenskis argue that the

decision in that case has no bearing on their damages related to the purchase of the 13-acre parcel because but for Coughlin's negligence, they would not have bought that parcel. The Stazenskis also argue that *Lindahl* does not affect their claim for damages related to the title insurance on the 431-acre and 10-acre parcels because the insurer denied their claim on the basis of it being time-barred and the Stazenskis' experts had opined that they would have had a valid claim under the policy. The Coughlin Defendants and Boyle Firm argue that the Stazenskis are collaterally estopped from arguing that the properties are inaccessible, that they did not receive marketable title, and that they bought the properties without notice of title defects. The parties agree the trustee's sale issue is not collaterally estopped by *Lindahl*.

**¶23**　　"Collateral estoppel, or issue preclusion, binds a party to a decision on an issue litigated in a previous lawsuit if the following factors are satisfied: (1) the issue was actually litigated in the previous proceeding, (2) the parties had a full and fair opportunity and motive to litigate the issue, (3) a valid and final decision on the merits was entered, (4) resolution of the issue was essential to the decision, and (5) there is common identity of the parties." *Campbell v. SZL Properties, Ltd.*, 204 Ariz. 221, 223, ¶ 9, 62 P.3d 966, 968 (App. 2003). Common identity of the parties is not necessary if collateral estoppel is invoked "defensively," as it is here, to prevent a plaintiff from relitigating an issue the plaintiff previously litigated unsuccessfully. *Id.* at ¶ 10.

**¶24**　　Because these elements are satisfied, we determine the Stazenskis are collaterally estopped from relitigating accessibility, marketable title, and notice of title defects. Each of those issues was conclusively resolved in *Lindahl*, when we held that the Stazenskis had access to the 431-acre and 10-acre parcels through a prescriptive easement, have access to the 13-acre parcel by that same prescriptive easement, had marketable title to the property bought from the Lindahls and the Havens, and had notice of the alleged title defects. *Lindahl,* 2015 WL 1456658 at *2, 5-6, ¶¶ 8, 17-19. Moreover, we rejected the Stazenskis' claim that they could not enforce their access by a prescriptive easement without joining the neighboring landowner who owned the servient estate over which the prescriptive easement ran, *see, e.g., supra* ¶¶ 3, 5. *Id.* at *2-3, ¶¶9, 12, n.6. Thus, as established by *Lindahl,* the Stazenskis had or have access to all three properties by the prescriptive easement and marketable title.

## II. Claims Related to Damages in the Form of a Lack of Access to the Properties / Lack of Marketable Title

### A. Purchase of the 13-Acre Parcel / Lost Investment

¶25 The Stazenskis' claims that they have been damaged by the lost investment in the 13-acre parcel in 2007 hinge on Coughlin's purported failures to tell the Stazenskis about the allegedly defective nature of the recorded Quit Claim Easement. All three claims based on this damage are barred by collateral estoppel.

¶26 In support of that argument, the Stazenskis stated in response to the motions for summary judgment that "[i]n light of Coughlin not disclosing . . . before March of 2007 . . . that the recorded [Quit Claim] [E]asement to the [431-acre and 10-acre parcels] was not transferable and fell short of the property . . . the Stazenskis proceeded to buy [the 13-acre parcel] . . . assum[ing] that they could use the [Quit Claim] [E]asement to get to this new parcel." Mr. Stazenski's affidavit was attached to the statement of facts wherein he avowed "[w]e would not have purchased this real estate if we knew the properties had no valid easement for access." The reference to "this real estate" related to all three parcels. The Stazenskis' damages expert opined that the damages were $300,283 based on the assumption that the Stazenskis would not have purchased the 13-acre parcel "had [the Stazenskis] known that a legal easement did not exist, or if the lack of easement was not cured, for the [431-acre] and the [10-acre parcels]." This expert also referred to $4000 in attorneys' fees, apparently in relation to the purchase of the 13-acre parcel which would not have been incurred if the Stazenskis had known the parcel was landlocked. On appeal, the Stazenskis characterize that $4000 as upkeep expenses for maintaining the 13-acre parcel.

¶27 The superior court did not err in granting summary judgment against the Stazenskis on these claimed damages because the Stazenskis had access to all three properties through the prescriptive easement. *Lindahl*, 2015 WL 1456658, at *2, ¶ 8. Each of the claims against the Coughlin Defendants and the Boyle Firm require a showing of damages to the Stazenskis caused by the alleged improper acts and omissions by these defendants. *See supra* ¶ 21.

¶28 Because the Stazenskis have access to the 13-acre parcel, they can show no resulting damages, meaning their claims on this issue fail as a matter of law.

¶29　　　　Beginning in their motion for reconsideration, the Stazenskis began articulating their argument slightly differently—that they would not have bought the 13-acre parcel but for Coughlin's failures to tell them that access to the 13-acre parcel was based on a prescriptive easement. Likewise on appeal, they maintain they "did not bargain for a prescriptive easement [and] do not want to litigate it," and "would not have purchased the 13 acres if Coughlin had disclosed to them that the 13 acres (or the two other properties purchased) had no valid recorded easement or that access was based wholly or partially on a prescriptive easement." This argument fails for several reasons.

¶30　　　　First, a party may not assert new facts in a motion for reconsideration after a court has granted summary judgment unless the new facts constitute newly discovered evidence. *Tilley v. Delci*, 220 Ariz. 233, 238, ¶ 17, 204 P.3d 1082, 1087 (App. 2009). Similarly, we will not consider on appeal new arguments made in a motion for reconsideration. *Evans Withycombe, Inc. v. Western Innovations, Inc.*, 215 Ariz. 237, 240, ¶ 15, 159 P.3d 547, 550 (App. 2006). In response to the superior court's holding on summary judgment that the Stazenskis have access to the 13-acre parcel by the prescriptive easement, the Stazenskis cannot assert new facts by declaration and argue that they would only have bought the 13-acre parcel with access by the recorded Quit Claim Easement and not a prescriptive easement.

¶31　　　　Second, even under their revised theory that they would not have bought the 13-acre parcel unless they had access through a recorded easement, no reasonable factfinder could determine that Coughlin caused damage of a lost investment. The Stazenskis' experts based their damage opinions on claims of lack of access to the 13-acre parcel, not lack of access by a recorded easement. *See supra* ¶¶ 11-12, 26. Access by a prescriptive easement is still access by any other name. Nor can we infer that the lack of a recorded easement to the 13-acre parcel affected their title. Our decision in *Lindahl* forecloses a determination that they suffered damage by buying an inaccessible/unmarketable property or that they would have to litigate the prescriptive easement with the owners of the servient estate. In *Lindahl* we affirmed the superior court's determination that the owner of the 13-acre parcel has and had vested, perfected prescriptive easement rights in South Mule Shoe Ranch Road for ingress and egress and marketable title. 2015 WL 1456658, at *2, 5, ¶¶ 8, 17. Thus, even assuming that Coughlin's alleged failures caused the Stazenskis to buy the 13-acre parcel, without proof of the damage of an inaccessible/unmarketable property, the Stazenskis cannot prove their claims against the Coughlin Defendants or Boyle Firm related to the purchase.

¶32 Finally, in *Lindahl,* we determined that the Stazenskis had constructive knowledge of any defects in the Quit Claim Easement when they purchased the first two parcels. 2015 WL 1456658, at *5, ¶ 19. "[T]he Stazenskis purchased the 431 and 10-acre parcels [in 2005] with full knowledge of the alleged Quit Claim Deed defect." *Id.* Thus, their claim that they would not have purchased the 13-acre parcel had they known the recorded Quit Claim Easement was defective and that there was only a prescriptive easement cannot withstand summary judgment because they had the same knowledge when they purchased the 13-acre parcel in 2007 notwithstanding any of Coughlin's alleged disclosure failures.[12]

¶33 The superior court was correct that the Stazenskis cannot carry their burden to show the Coughlin Defendants or the Boyle Firm caused the Stazenskis' damage and summary judgment was warranted on the claims related to the purchase of the 13-acre parcel.

### B. Lost Claim for Title Insurance Benefits for the 431-acre and 10-acre Parcels

¶34 The Stazenskis assert that because Coughlin did not advise them to make a title insurance claim on their policy insuring access to the 431-acre and 10-acre parcels before ceasing to own the properties, they lost between $150,000 and $1.2 million in title insurance benefits. To support this claim, the Stazenskis' title insurance expert opined that the Stazenskis "would have had a valid claim against the title company" on the policy insuring the 431-acre and 10-acre parcels because the "title policy specifically insures the right of access to and from their property" and "the value of the property without an easement is $0."

¶35 This claim for damages also fails because the expert's opinion was based on the assumption that the properties had no easement for access. *See supra* ¶ 12. In *Lindahl,* we held that the Stazenskis had a prescriptive easement for ingress and egress to these properties, thus foreclosing a claim that there was no easement for access to the properties. 2015 WL 1456658, at *1-2, ¶¶ 4, 8. There is no evidence in the record that the Stazenskis would have recovered any monetary benefit under any title

---

[12] In *Lindahl* we determined that the recorded Quit Claim Easement "did not, on its face, have anything to do with the 13-acre parcel." 2015 WL 1456658, at *6, ¶ 20. Therefore, even assuming Coughlin failed to tell them about the allegedly defective Quit Claim Easement or that there was only a prescriptive easement, such failures cannot be the cause of the Stazenskis' purchase of the 13-acre parcel.

insurance policy when they had vested, perfected prescriptive easement access.

**¶36** This conclusion is further supported by the terms of the policy itself. The policy expressly limited the coverage to loss caused by lack of access to the properties or unmarketable title. In *Lindahl*, we held the Stazenskis had access to the properties through the prescriptive easement and had marketable title to the 431-acre and 10-acre parcels.[13] *Id.* at *1-2, 5, ¶¶ 4, 8, 17.

**¶37** Even assuming Coughlin failed to advise the Stazenskis to file a title insurance claim, they cannot prove damages caused by such failure when they had both access and marketable title and the policy coverage was for lack of access or lack of marketable title.

**III.   Claims Related to Damages Premised Upon Trustee Sale**

**¶38** The Stazenskis' final argument is that the superior court erred by granting summary judgment on the claims related to the trustee sale of the 10-acre parcel. The Stazenskis contend the court improperly found that they voluntarily entered the Deficiency Agreement with Country Bank to proceed with the trustee sale that included both parcels. The Stazenskis maintain that the court could not have made this determination had it considered Mr. Stazenski's affidavit filed in opposition to Coughlin's MSJ. The Stazenskis direct us to the part of the affidavit that states when they signed the Deficiency Agreement, it was Mr. Stazenski's understanding the sale would be rescheduled to a later date so the Stazenskis had time to sell to the Sachs.

**¶39** It is unclear what, if any, significance the fact that the Stazenskis thought the sale would be rescheduled by Country Bank has upon the question of whether Coughlin caused them damages in the loss of the 10-acre parcel by not objecting to the trustee sale.

**¶40** In any event, the Stazenskis never asserted that but for Coughlin's alleged failures to enjoin the sale prior to the Deficiency

---

[13] We note that although the defense expert opined that the Stazenskis had access by Iron Horse Road to the 10-acre parcel and the Stazenskis' title insurance expert averred that did not change his opinion on the title claim as to the 431-acre and 10-acre parcels, this does not preclude summary judgment on the title claim. We determined that the Stazenskis had access to the 431-acre and 10-acre parcels insured by the title company through Mule Shoe Ranch Road. *Lindahl*, 2015 WL 1456658 at *2, ¶ 8.

Agreement they would not have entered into the Deficiency Agreement. The Stazenskis also never asserted that Coughlin was involved or was supposed to be involved in the Deficiency Agreement or in the alleged rescheduling of the sale date. Nor have they asserted that as a matter of law the Deficiency Agreement somehow prevented Country Bank's ability to sell the 10-acre parcel at the trustee sale or that they would have recovered the value of the property due to an alleged wrongful foreclosure. In short, the record supports that the Stazenskis voluntarily entered the Deficiency Agreement without Coughlin's involvement, and the Stazenskis do not challenge the superior court's legal determination about the effect of the Deficiency Agreement or that it compromised their claim against Coughlin for failing to object to the sale.

¶41        No reasonable factfinder could determine that but for Coughlin's alleged failure to object, either before or after the Deficiency Agreement, the Stazenskis would not have lost the 10-acre parcel at the sale or would have recovered the value of the property due to an alleged wrongful foreclosure.

## CONCLUSION

¶42        For the reasons stated above, we affirm the summary judgments for the Coughlin Defendants and the Boyle Firm.[14]  We will award the Coughlin Defendants and the Boyle Firm their taxable costs on appeal upon timely compliance with Arizona Rule of Civil Appellate Procedure 21.



Ruth A. Willingham · Clerk of the Court
FILED: ama

---

[14] Given the analysis and resolution of the issues above, we do not address the other arguments made by the parties.