NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

NATIONAL TAX LIEN REDEMPTION SERVICES L.L.C., et al.,
*Plaintiffs/Appellees*,

*v.*

JAMES M. RIVERS, et al.,
*Defendants/Appellants*.

No. 1 CA-CV 17-0765
FILED 1-8-2019

Appeal from the Superior Court in Maricopa County
No.  CV2012-092032
The Honorable David M. Talamante, Judge

**AFFIRMED IN PART; REVERSED IN PART; VACATED IN PART;
REMANDED**

COUNSEL

The Hendrix Law Office, Gilbert
By Heather M. Hendrix
*Counsel for Plaintiff/Appellee National Tax Lien Redemption Services L.L.C.*

Lake & Cobb, P.L.C., Tempe
By Richard L. Cobb, Hank E. Pearson
*Counsel for Plaintiff/Appellee Premier Equity Solutions, L.L.C.*

Gust Rosenfield, P.L.C., Phoenix
By Scott A. Malm, Mina O'Boyle
*Co-Counsel for Plaintiffs/Appellees Geared Equity, L.L.C. and 50780, L.L.C.*

Kevin T. Ahern, P.C., Phoenix
By Kevin T. Ahern
*Co-Counsel for Plaintiffs/Appellees Geared Equity, L.L.C. and 50780, L.L.C.*

Cochran Law Firm, P.C., Phoenix
By Jerry L. Cochran
*Co-Counsel for Defendants/Appellants*

Treon & Aguirre, P.L.L.C., Phoenix
By Richard T. Treon
*Co-Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Presiding Judge Kenton D. Jones delivered the decision of the Court, in which Vice Chief Judge Peter B. Swann and Judge David D. Weinzweig joined.

---

**J O N E S**, Judge:

¶1        James Rivers and Richard Treon (collectively, Rivers/Treon) appeal the trial court's orders denying partial summary judgment in their favor and later granting summary judgment in favor of National Tax Lien Redemption Services L.L.C. (National Tax); Premier Equity Solutions, L.L.C. (Premier); and Geared Equity, L.L.C. and 50780, L.L.C. (collectively the Lenders).  At issue is whether Rivers/Treon have standing to redeem tax liens filed against a parcel of real property in Phoenix (the Property) arising from an interest Rivers/Treon claim to possess in the Property.  For the following reasons, we hold that Rivers/Treon presented sufficient evidence of their alleged interest in the Property to create a genuine issue of material fact that precluded entry of summary judgment in Appellees' favor.  Accordingly, we affirm in part, reverse in part, vacate the award of attorneys' fees, and remand for further proceedings.

## FACTS AND PROCEDURAL HISTORY

**¶2**        This is a highly unusual tax lien foreclosure/quiet title case that raises procedural, ethical, and public policy concerns.[1]  Nonetheless, this Court is limited to reviewing the posture of the case presented by the parties.  *See Young v. Bishop*, 88 Ariz. 140, 147 (1960).  "On appeal from a grant of summary judgment, we view all facts and reasonable inferences therefrom in the light most favorable to the party against whom judgment was entered."  *City of Tempe v. State*, 237 Ariz. 360, 362, ¶ 1 n.3 (App. 2015) (quoting *Bothell v. Two Point Acres, Inc.*, 192 Ariz. 313, 315, ¶ 2 (App. 1998)).

### A.        The Sweeneys/Rivers/Treon Interests

**¶3**        In 1983, Diane Sweeney and her husband, Tom, purchased the Property as a residence for Tom's mother.[2]  Three years later, the Sweeneys borrowed $120,000 from Rivers.  Treon wore several hats in the transaction, including attorney for both parties, personal guarantor of repayment, and ultimately a lender to the Sweeneys.  He drafted the written promissory note (the 1986 Note), the recorded deed of trust securing the note, and his personal guaranty.

**¶4**        The relevant documents have been lost, including the original and all copies of the 1986 Note and Treon's personal guaranty.  According to Treon and the Sweeneys, however, the 1986 Note required the Sweeneys to pay taxes on the Property, make monthly interest payments, and repay the underlying indebtedness within 120 days of written demand.

**¶5**        In 1987, the Sweeneys were unable to make monthly interest payments on the 1986 Note, so Treon began making them pursuant to the guaranty.  Treon then paid off the principal in its entirety and obtained a written assignment (the 1988 Assignment) of Rivers' rights under the 1986 Note and Deed of Trust.  The 1988 Assignment was not recorded and has likewise been lost.

---

[1]        Additional procedural issues are detailed in a related and contemporaneously filed decision, *Nat'l Tax Lien Redemption Servs. L.L.C. v. Sweeney*, 1 CA-CV 17-0611 (Ariz. App. Jan. 8, 2019) (mem. decision).

[2]        Tom quitclaimed his interest in the Property to Diane in 2007 but retained responsibility to pay the property taxes and insurance.

¶6        Shortly thereafter, Treon and the Sweeneys orally agreed to change the terms of the original loan.  Treon described the new terms as follows:

> I agreed to forebear enforcing the 120-day payment demand provision of the note; the Sweeneys agreed they would pay the note off when they were able plus all accrued interest . . . Thomas Sweeney's mother . . . could continue to live in the house and the interest owed on the $120,000 note would simply accumulate pending one of three possible events. First, Thomas and Diane Sweeney would pay off all of the accrued interest and the principal; second if [Tom's mother] moved, or third, died, Thomas and Diane Sweeney and I would then implement our oral partnership agreement that provided that the property would then either be sold, or if market circumstances were favorable, we would engage in a joint venture to develop the property.  If the property was sold, I would receive the $120,000 plus all accrued interest . . . and the Sweeneys and I would then split the net dollars left out of the sale price, if any.  Or, we would jointly develop the property and I would subordinate the Rivers' Deed of Trust for financing in order to build a house, and the payment would be the same: I would receive the first $120,000 plus all accrued interest and we would divide the net profits equally.

### B.        Appellees' Interests

¶7        After Tom failed to pay the taxes on the Property, the Maricopa County Treasurer sold the resulting tax liens to National Tax.  In March 2012, National Tax filed a tax lien foreclosure action against Diane as the property owner and Rivers as a "beneficiary."  Seven months later, National Tax obtained judgment against Diane — the effect of which was to foreclose her right to redeem the tax liens — and received a treasurer's deed to the Property.  In May 2013, National Tax sold the Property to Premier, which later intervened in the lawsuit.

¶8        National Tax had neglected to serve Rivers with the foreclosure complaint, however, until around eighteen months *after* securing a judgment and obtaining title to the Property.[3]  Premier sought

---

[3]       It is unclear from the record exactly why National Tax waited to serve Rivers until after it had already obtained the treasurer's deed and sold

summary judgment on the grounds that Rivers had been served by publication. The trial court found National Tax had failed to properly serve Rivers, and thus, the 2012 foreclosure judgment did "not operate to foreclose [Rivers/Treon's] redemption rights."

¶9         The parties then moved into the quiet title phase of litigation. Premier amended the complaint to include a quiet title action in February 2016.[4] Premier asserted that Rivers/Treon never had a valid interest in the Property, and therefore never had any right to redeem the tax liens.

¶10         Rivers/Treon and Premier filed cross-motions for summary judgment in September 2016. In support of its motion, Rivers/Treon submitted: (1) declarations from the Sweeneys and Treon describing the terms of the oral 1988 Agreement and (2) a 2015 agreement between Treon and a special conservator appointed to protect the now-mentally incapacitated Rivers, which said that "Treon entered into a separate agreement [in 1988] with the Sweeneys" that contained different terms than those in the 1986 Note.

¶11         In March and May 2017, the trial court denied Rivers/Treon's motion and entered summary judgment in Premier's favor. After moving unsuccessfully for a new trial, Rivers/Treon timely appealed, and we have jurisdiction over both orders pursuant to A.R.S. §§ 12-120.21(A)(1)[5] and -2101(A)(1). *See Bothell*, 192 Ariz. at 316, ¶ 7 (holding that although an order denying summary judgment is generally not appealable, the court may review the order along with one granting summary judgment "to avoid piecemeal litigation") (citing *Mealey v. Orlich*, 120 Ariz. 321, 322

_____

the Property to Premier. Correspondence in January 2014 between Premier's attorney and its title agency suggests Premier had demanded that National Tax "fix the mess," and thus National Tax's intention was to serve Rivers and attempt to obtain default judgment against his potential interest in the Property.

[4]         In June 2015, eight months before filing the quite title action, Premier sent Rivers/Treon a demand for their execution of a quitclaim deed along with five dollars as required by Arizona Revised Statutes (A.R.S.) § 12-1103(B). Rivers/Treon rejected the demand.

[5]         Absent material changes from the relevant date, we cite a statute's current version.

(1978), and *State Farm Mut. Auto. Ins. v. Peaton*, 168 Ariz. 184, 194 (App. 1990)).

## DISCUSSION

**¶12**     We review a trial court's disposition on summary judgment *de novo*. *Salib v. City of Mesa*, 212 Ariz. 446, 450, ¶ 4 (App. 2006) (citing *Romley v. Arpaio*, 202 Ariz. 47, 51, ¶ 12 (App. 2002)). Summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990).

## I.     Premier's Motion for Summary Judgment

**¶13**     Premier moved for summary judgment on the grounds that: (1) Rivers/Treon were required to show documentary evidence that the 1986 Note existed; (2) even assuming the 1988 Agreement existed, it extinguished the 1986 Deed of Trust; (3) the statute of frauds barred Rivers/Treon's rights to redeem the tax liens; (4) the statute of limitations barred Rivers/Treon's rights; (5) Premier and the Lenders were bona fide purchasers, and thus, protected from Treon's unrecorded 1988 interest; and (6) no reasonable jury would believe the unrecorded 1986 Note or 1988 Agreement existed. We discuss each argument in turn.

### A.     Rivers/Treon Were Not Required to Provide the Original or Copy of the 1986 Note.

**¶14**     Appellees rely upon A.R.S. § 47-3309 (governing the enforcement of a lost, destroyed, or stolen instrument) to argue Rivers/Treon have no interest in the Property because it cannot prove the 1986 Note ever existed. However, A.R.S. § 47-3309 is contained within Arizona's version of the Uniform Commercial Code (UCC), and "the UCC does not govern liens on real property." *Steinberger v. McVey*, 234 Ariz. 125, 136, ¶ 43 n.14 (App. 2014). Additionally, this Court has held that, where documents tracing a beneficial interest are not available, "affidavits or deposition testimony from persons involved in the transfers may suffice as evidence of the chain of title." *Id.* at ¶ 43.

**¶15**     Here, Rivers/Treon provided evidence of the existence and terms of the 1986 Note in the form of: (1) the 1986 Deed of Trust, which references a "Promissory Note dated July 17, 1986" in the amount of $120,000; (2) Treon's declaration and deposition testimony, (3) the Sweeneys' declarations and deposition testimony; and (4) the declaration of Rivers' mother. Viewing that evidence in the light most favorable to the

non-prevailing party, we find Rivers/Treon presented sufficient evidence of the 1986 Note's existence to create a genuine issue of material fact requiring resolution by a jury.

### B. Competing Arguments Regarding Novation and Subrogation Are Dependent Upon Genuine Issues of Material Fact.

¶16　　　　Assuming the 1986 Note existed, Appellees argue Rivers/Treon have no interest in the Property because the 1986 Deed of Trust was extinguished either when (1) Treon paid off the Sweeneys' $120,000 loan, or (2) Treon and the Sweeneys entered the 1988 Agreement to change the loan's terms, constituting a novation of the 1986 Note. Rivers/Treon counter that Treon stepped into the shoes of Rivers via the doctrine of subrogation when he paid the loan off and his interest remained secured by the 1986 Deed of Trust.

¶17　　　　Here, the parties dispute the very existence of the 1986 Note, Treon's payment to Rivers, the 1988 Assignment, and the 1988 Agreement. And without conceding their existence, Appellees contest the specific terms of the purported agreements as well as the Sweeneys' and Rivers/Treon's intent to extinguish the 1986 Deed of Trust. Thus, before the trial court can rule upon the novation or subrogation arguments, a jury must resolve factual disputes regarding the existence, terms, and intent of the agreements. *See Taser Int'l, Inc. v. Ward*, 224 Ariz. 389, 393, ¶ 12 (App. 2010) ("Summary judgment is not intended to resolve factual disputes and is inappropriate if the court must determine the credibility of witnesses, weigh the quality of evidence, or choose among competing inferences.") (citing *Orme Sch.*, 166 Ariz. at 308-09, and *State Comp. Fund v. Yellow Cab Co. of Phx.*, 197 Ariz. 120, 123, ¶ 11 (App. 1999)). As such, summary judgment is not appropriate for the resolution of these issues.

### C. The Statute of Frauds and Statute of Limitations Are Inapplicable.

¶18　　　　Appellees next argue Rivers/Treon have no enforceable interest in the Property because enforcement of the 1988 Agreement is barred by the statute of frauds and statute of limitations. Not so. Appellees' statute of frauds defense fails because they have no interest in the oral agreement between the Sweeneys and Treon. *See* Restatement (Second) of Contracts § 144 & cmt. d (1981) ("Only parties to a contract and their transferees and successors can take advantage of the Statute of Frauds. As against others the unenforceable contract creates the same rights, powers,

privileges and immunities as if it were enforceable."); *see also In re Circle K Corp.*, 127 F.3d 904, 908 (9th Cir. 1997) (same) (citations omitted).

**¶19** For the same reason, Appellees' reliance upon the statute of limitations fails; the defense is only available to the borrower or one in privity, not a third-party tax lien purchaser, grantee of the treasurer's deed, or subsequent lienholders. *See Acad. Life Ins. v. Odiorne*, 165 Ariz. 188, 190 (App. 1990) ("The defense of the statute of limitations is a personal privilege that a debtor or one in privity may elect to urge or waive. Because this defense is personal, . . . a general creditor may not plead the statute of limitations on its debtor's behalf.") (citing *Trujillo v. Trujillo*, 75 Ariz. 146, 148 (1953)); *see also Provident Mut. Bldg.-Loan Ass'n v. Schwertner*, 15 Ariz. 517, 518 (1914) ("[The statute of limitations defense] prevents a recovery when properly invoked by the debtor. It is a shield and not a sword. It can be used for defense, but not for assault.").

### D. Appellees Are Not Bona Fide Purchasers.

**¶20** Finally, Appellees argue Rivers/Treon have no interest in the Property because the 1988 Agreement was not, by its reported terms, secured by the 1986 Deed of Trust. To the extent this argument is conditioned upon a finding that the 1988 Agreement extinguished the 1986 Deed of Trust through novation, it is premature. *See supra* Part I(B).

**¶21** A person's interest in the property need not be publicly recorded to trigger a right of redemption. Rather, a real property tax lien may be redeemed "at any time before judgment is entered," A.R.S. § 42-18206, by "[a]ny person who has a legal or equitable claim in the property," A.R.S. § 42-18151(A)(4), without regard to the interest's recordation. *See Delo v. GMAC Mortg., L.L.C.*, 232 Ariz. 133, 135-38, ¶¶ 7-17 (App. 2013) (acknowledging a right to redeem a tax lien based upon an unrecorded interest); *Roberts v. Robert*, 215 Ariz. 176, 180, ¶¶ 16-17 (App. 2007) (same). The 1988 Agreement, as described by the Sweeneys and Treon, created an interest in the Property triggering Rivers/Treon's rights to redeem. *See supra* ¶ 6. The lack of recordation, like the lack of writing, however imprudent, does not subject Appellees' claims to resolution on summary judgment unless National Tax was a bona fide purchaser. *See Delo*, 232 Ariz. at 138, ¶ 18.

**¶22** "A bona fide purchaser is one who purchases property for value and without actual or constructive notice of a prior unrecorded interest." *Id.* (citing *First Am. Title Co. v. Action Acquisitions, L.L.C.*, 218 Ariz. 394, 398, ¶ 12 (2008), and *Davis v. Kleindienst*, 64 Ariz. 251, 258 (1946)). A

purchaser is on constructive notice of recorded documents and "of the facts a reasonably diligent inquiry would disclose." *Hall v. World Sav. & Loan Ass'n*, 189 Ariz. 495, 500 (App. 1997) (quoting *Maricopa Utils. Co. v. Cline*, 60 Ariz. 209, 214 (1943)). Significantly, if a purchaser relies upon a title company to investigate prior claims upon a property, the purchaser "is bound by whatever notice the title company had while acting within the scope of its authority." *Id.* at 501 (citations omitted). This is particularly true in the context of a tax lien foreclosure where "the onus is on the purchaser to protect its own interests." *PLM Tax Certificate Program 1991-92, L.P. v. Schweikert*, 216 Ariz. 47, 51, ¶ 23 (App. 2007) (citing *Suzico, Inc. v. Maricopa Cty.*, 187 Ariz. 269, 272 (App. 1996)). Indeed, "[e]quity favors the right to redeem [a real property tax lien] and will not deny the right except upon strict compliance with the steps necessary to divest it." *Delo*, 232 Ariz. at 137, ¶ 12 (quoting *Harbel Oil Co. v. Steele*, 83 Ariz. 181, 185 (1957)).

**¶23** Although National Tax knew or should have known of the interests in the Property reflected within the recorded 1986 Deed of Trust, National Tax failed to properly serve Rivers/Treon. The record further reflects that Premier's agents, Title Resources Guaranty, L.L.C. and First AZ Title Company, knew about the 1986 Deed of Trust and the Rivers/Treon connection before Premier purchased the Property, and that Premier had actual knowledge of the 1986 Deed of Trust prior to borrowing nearly a million dollars from the Lenders. Yet, no effort was made to investigate the Rivers/Treon claims or provide them proper notice of the proceedings, and Premier continued to develop the Property in the face of potential adverse interests. Appellees' failure to comply with basic service requirements or investigate the recorded deed of trust precludes them from claiming the protections of a bona fide purchaser.

## II.    Rivers/Treon's Motion for Partial Summary Judgment

**¶24** Rivers/Treon argue the trial court erred by denying the competing motion for summary judgment. In that motion, Rivers/Treon argued there were "no material fact issues as to the terms and conditions of the [1988 Agreement]" because the Sweeneys and Treon agreed upon the contents of the 1986 Note and the 1988 Agreement, and therefore, "there [was] nothing to present to the jury." Our *de novo* review of the record, however, reveals that although Rivers/Treon characterized the testimony as "uncontroverted," Premier strenuously argued the testimony was unsupported by documentary evidence and the credibility of the parties was highly questionable — concerns we find to have considerable merit. Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," *see Orme*

*Sch.*, 166 Ariz. at 309 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)), the trial court correctly denied Rivers/Treon's motion.

### III.     Attorneys' Fees

¶25         In two separate orders, the trial court awarded Premier a total of $258,930.00 in attorneys' fees pursuant to A.R.S. § 12-1103(B). That statute provides:

> If a party, twenty days prior to bringing the action to quiet title to real property, requests the person, other than the state, holding an apparent adverse interest or right therein to execute a quit claim deed thereto, and also tenders to him five dollars for execution and delivery of the deed, and if such person refuses or neglects to comply, the filing of a disclaimer of interest or right shall not avoid the costs and the court may allow plaintiff, in addition to the ordinary costs, an attorney's fee to be fixed by the court.

A.R.S. § 12-1103(B). Because we reverse the order granting summary judgment, Appellees can no longer be deemed the successful parties and the fee awards are vacated.

### CONCLUSION

¶26         In sum, the record contains sufficient evidence to create genuine issues of material fact regarding the existence and terms of the 1986 Note, the 1988 Assignment, and the 1988 Agreement. Additionally, none of the legal theories identified by Appellees provide grounds for granting summary judgment as a matter of law. Accordingly, we reverse the trial court's order granting Appellee's motion for summary judgment, affirm the order denying Rivers/Treon's motion, and vacate the award of attorneys' fees. As the successful parties on appeal, Rivers/Treon are entitled to reasonable costs upon compliance with ARCAP 21(b).

¶27         We stress that nothing within this decision should be construed as an opinion upon the ultimate merits of the claims. Additionally, as we noted at the beginning of this case, the circumstances implicate significant ethical and public policy concerns. Because those issues were not raised or argued before us, we leave for another day the question of whether the alleged agreements might be unenforceable as a matter of public policy. *Cf. Levine v. Haralson, Miller, Pitt, Feldman & McAnally, P.L.C.*, 244 Ariz. 234, 239, ¶ 19 (App. 2018) (barring the recovery

of attorneys' fees in *quantum meruit* where the contract for legal services was found void as against public policy).



AMY M. WOOD • Clerk of the Court
FILED:  AA